THOMPSON vs. BERTRAND.

In an action for breach of the warranty of a slave, the declaration alleged that the slave was unsound, and diseased in his knees; *Held*, that the declaration cannot be construed as containing a specification of unsoundness only in the knees.

A person who is not shown to be skilled in the science and practice of medicine, is not a competent witness to express an opinion upon the soundness or unsoundness of a slave; but he may state facts in reference to the appearance and condition of the slave.

The value of the slave at the place where he is purchased—not his value elsewhere—may be enquired into, in ascertaining the damage of the purchaser on account of the unsoundness of the slave. (*McDaniel vs. Crabtree*, 21 *Ark.* ; *Morton vs. Scull, ante.*)

It is not necessary that a slave should be afflicted with an incurable disease to constitute a breach of the warranty of soundness.

An express warranty does not cover a defect that is so apparent as to be obvious upon careless inspection; but if the purchaser of a slave might have discovered defects by having the slave stripped, he is not bound to do so, he may rely upon the warranty.

It is not error to refuse an instruction where there is no testimony upon which to found it; nor where it embraces several propositions, part legal and a part illegal—in such case the instruction as a whole should be refused.

No testimony but what is strictly competent should be allowed to become an element to ascertain the unliquidated damages of the plaintiff.

*Writ of Error to Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

GARLAND & RANDOLPH, for the plaintiff.

BERTRAND, contra.

Mr. Justice FAIRCHILD delivered the opinion of the court.

Thompson executed to Bertrand a bill of sale of the slave Albert, which contained a warranty of soundness of body. This was in October, 1859, and, in the ensuing April, Bertrand complained of Thompson, by action of covenant, in Pulaski Circuit Court, that, when the bill of sale was made, Albert was unsound and diseased in his knees. The second and third pleas were respectively that, at the time of the sale, Albert was sound, was not diseased in his knees. Upon issue to these pleas, to one of general performance, and to one that Albert was a good field hand, a trial was had, and there were verdict and judgment for

the plaintiff, from which the defendant has brought error to this court.

The declaration cannot be construed as containing a specification of unsoundness only in the knees. There is a special breach of diseased knees, and one of unsoundness; and the defendant so interpreted the declaration by his second plea; and even the third plea, whose principal office would seem to be to deny the disease in the knees, also alleged that Albert was not otherwise diseased.

To establish the charges of unsoundness made in the declaration, Bertrand produced the deposition of Hart, his overseer, who stated that, in October, 1859, Albert came under his control; that the knees and ankles of the negro were then swelled and scarred; that in the winter and spring he complained of his knees; that Hart had had charge of the boy for a year, during which time he had not done, and had not been able to do, a good day's work. So far the testimony was proper, as the witness was competent to depose to the facts of the appearance of the knees and ankles of Albert, and of his want of ability to labor. It was also legal to recount to the jury the complaints made by the boy of existing sickness or unsoundness. 1 *Ph. Ev.* 182, *note* 74, 4 *Am. Ed.* But when Hart went on to say that if Albert did not complain of his knees, the disease fell into the small of his back; that he had been unsound and diseased all the while he had been with the witness, and that from his own examinations, he did not believe that Albert had ever been sound, the witness was not narrating facts, but was stating deductions from his own observation of Albert, and conclusions formed or strengthened from his experience among negroes. Notwithstanding the witness does not betray any distrust of his ability to pronounce with authority upon the unsound condition, present and past, of Albert, and though it was drawn out, by the plaintiff, from the witness, that management of negroes had been his business for sixteen years, and that he had been doctoring Albert all the year, it is not shown to us

that he is a person whose reading and skill required his opinion to be taken as evidence.

Akin, another overseer, also testified concerning the unsoundness of Albert, as he regarded his condition; and his testimony, as the mere opinion of an incompetent person, should, like the theoretical part of Hart's deposition, have been excluded from the jury upon the objection of the defendant.

Hart and Akin both testified to the value of the boy as if sound, and in his actual condition, according to the price of negroes at Pine Bluff, as may be inferred from the testimony of Akin, and as is expressly stated by Hart. The value should have been estimated by the worth of Albert at the place where he was sold. *McDaniel vs. Crabtree*, 21 *Ark.* 436; *Morton vs. Scull*, 23 *Ark.*

The objection to the testimony of Scull cannot be sustained. Saying that one is a physician by profession, is equivalent to saying that he is a physician by practice. In the sense in which the witness used the word "profession," it means "a calling"— "an employment," and this is one of the legitimate meanings of the word. To make an opinion upon disease competent testimony, it must be given by one skilled in the science and practice of medicine, as this court held in *Tatum vs. Mohr*, 21 *Ark.* 354; but what Scull said of himself, brings him within the rule of qualification.

We do not perceive any error of the Circuit Court in giving or refusing the instructions asked by the parties. The single instruction of the plaintiff is conformable to previous decisions of this court. The fifth and sixth instructions of the defendant were well refused, for it cannot be the law, as it is not the fact, that a negro is sound unless afflicted with an incurable disease.

A substantial compliance with a warranty, or any contract, will satisfy the law, but there was no evidence for such an instruction, on the part of Thompson, to be founded upon, and so the court did not err in refusing the defendant's fourth instruction.

Part of the third instruction was correct, as accordant with

this opinion in confining the value of the negro to Pulaski county, and if this had been the whole instruction, the court would have given it, or, in refusing it, would have erred, but it embraced another proposition, that is, to exclude the consideration of all evidence of unsoundness of the negro, but that of the knees, which was incorrect, and the instruction, as a whole, was properly refused.

*Jordan vs. Foster*, 6 *Eng.* 141, does not sustain the first instruction of the defendant. That case only affirmed the proposition common to the text books, that an express warranty does not cover a defect that is so apparent as to be obvious upon careless inspection, and to every observer, requiring no skill or pains for its detection. 3 *Black. Com.* 165; *Story on Contracts, sec.* 532; *Smith on Contracts*, 355. Though Bertrand might, by ordinary diligence in examining the negro, have discovered the defective knees and ankles, he was not bound to strip the boy ; he might rely upon the warranty.

The testimony of Scull alone was sufficient to justify a verdict for the plaintiff, so far as the unsoundness of Albert was concerned, but the evidence of Hart and Akin, on the same subject, that should have been excluded, was well calculated to increase the damages, and must have been taken into consideration by the jury. This does not present such a case as the fact in *Sharp vs. Johnson*, 22 *Ark.* 86, which was established by legal evidence, and could not be hurt by the accumulation of illegal testimony. Here the verdict depends upon the estimate the jury put upon inferences and opinions of witnesses, and no testimony but what is strictly competent should be allowed to become an element to ascertain the unliquidated damages for which the plaintiff sued.

For the error indicated, the judgment of the Circuit Court of Pulaski county is reversed, and the case must be sent down for a new trial.

All of the points that seem to us important to be noticed are included in the foregoing opinion, although we have not, one

OF THE STATE OF ARKANSAS. **735**

by one, followed the needlessly numerous questions made upon the record.