GEORGE H. EASTMAN, Trustee, Appellant, v. G. W. MILLER.

**Consideration:** PAYMENT OF COSTS ON DISMISSAL. Where a vendee transfers his contract for the sale of land to a third person, who agrees to assume certain deferred payments, and suit therefor is afterwards brought by the vendor to collect such sum, the payments of costs on dismissal thereof is not a sufficient consideration for a contract between the vendee and the vendor relieving the former from liability for such deferred payments.

**SAME:** *Review of verdict for passion and prejudice.* A vendee transferred his contract for a sale of land to a third person, who agreed to pay certain deferred payments. Thereafter the vendor brought action against the vendee to collect such payments and the cause was rismissed, and a writing given to the vendee reciting that it was dismissed in consideration of the payment of costs, and that the vendee agreed to assist the vendor in recovering the. deferred payments from the assignee of the contract. The vendor and his attorney testified that the cause was dismissed to enable the vendee to collect the money from the assignee and that it was expressly stated that the dismissal would not relieve the vendee from liability. The vendee testifid that the attorneys stated that it would relieve the vendee. *Held,* not sufficient to sustain a finding that the vendee had been released, since the evidence, considered in connection with - the unreasonable character of the contract as claimed by vendee, was sufficient to raise the inference that such a finding was the result of passion and prejudice.

*Appeal from Buena Vista District Court.*—HON. F. H. HELSELL, Judge.

THURSDAY, APRIL 11, 1901.

ACTION for judgment on three promissory notes excuted by the defendant to the plaintiff for the deferred payments on real estate sold by the plaintiff to the defendant under a written contract. Defendant answered, admitting the execution of the notes, and that they were unpaid, and alleging as defense an oral agreement with the plaintiff

whereby defendant was released from liability on said notes. Plaintiff demurred to the answer on the ground that there was no consideration to support the alleged agreement. The demurrer was overruled, to which plaintiff excepts. Verdict and judgment were rendered in favor of defendant. Plaintiff appeals.—*Reversed.*

*F. F. Faville* and *A. D. Bailie* for appellant.

*Milt H. Allen* for appellee.

GIVEN, C. J.—I. The defense alleged is, in substance, as follows: That defendant sold and conveyed said contract of purchase to one Dunbar, who assumed and agreed to pay the deferred payments thereon as represented by said notes. "That since the said assignment and sale of the said contract by defendant the same has been frequently assigned and transferred to parties who are now unknown to defendant, but each of whom, as defendant is informed and verily believes, agreed to pay and assume the payment of said notes. That, after said assignment to Dunbar, plaintiff commenced a suit against defendant upon said notes. That while said cause was pending plaintiff and defendant had a settlement of the said matters pertaining to said action. That by the settlement this defendant was to pay the costs of the said suit, and was to aid and assist to the best of his ability in the collection of the said notes from the then holder of the land. That, in consideration of defendant's doing so, the plaintiff was to relinquish all claims against the defendant upon the said notes, and the said notes were to be fully settled as to this defendant, and plaintiff was to proceed to collect the same off and against the then holder of the said contract for the said land." Defendant alleges that in pursuance of said agreement he paid the costs of said action, that plaintiff caused the same to be dismissed, and that defendant has been, and still is, ready to aid plaintiff in the collection of said notes from the owner of the land.

In an amendment he alleges that said agreement was oral. The plaintiff demurred on the ground that the matters alleged do not constitute a defense, "for the reason that such agreement as alleged is without consideration and of no binding force or effect." The question raised by the demurrer is whether the answer shows a consideration for the alleged oral agreement. A consideration consists of some benefit or advantage accruing to the promisor, or of some loss or disadvantage incurred by the promisee. A consideration is an essential ingredient to the legal existence of every simple contract. This consideration consists, as defined by Smith, in his treatise on Contracts (page 87), in "any benefit to the person making the promise, or any loss, trouble, or inconvenience to, or charged upon, the person to whom it is made. That a promise to do what a person is bound to do by law is not a good consideration for another undertaking, and that the person is not bound to fulfill his promise to pay another for doing what he is bound by law to do, is well settled. * * * If the only consideration for the promise of the grantor is the performance by the debtor, or promise to perform, some act which he is legally bound to perform, the promise is without consideration." These statements of law are taken from *Ayers v. Railroad Co.,* 52 Iowa, 478, and are conceded by counsel to be the law. The defendant was liable on the notes, and therefore liable for the costs of the former action; hence an agreement to pay said costs was an agreement to do what he was in law bound to do, and afforded no consideration for the alleged agreement. It was to defendant's interest that payment of the notes should be enforced against the assignees of the contract under which the land was purchased, but he was under no legal obligation to aid or assist in so enforcing their payment. If it should be said that his promise to so aid and assist was a full consideration for the agreement, then the demurrer was properly overruled; but, in the view we take of the case on its merits, we do not determine this question.

II.   Whatever agreement was had between these parties was made while the former action was pending, and in an interview between them in the presence of A. D. Bailie, attorney for the plaintiff in that action.   The defendant's contention is that in consideration of his paying the costs of that action, and agreeing to aid and assist in enforcing collection against the then holder of the land, the plaintiff agreed to relinquish all claims against the defendant upon said notes; while the plaintiff claims that he agreed to dismiss said action, the defendant paying the costs, to afford the defendant opportunity to procure payment of the notes by the holder of the land.   At the time of their agreement an instrument in writing as follows was executed: "Storm Lake, Iowa, October 21st, 1896.   In consideration of the payment of eleven and 75 hundredths dollars costs, the case of Geo. H. Eastman, Trustee, vs. G. W. Miller, shall be, and the same is hereby, dismissed, as against the said defendant, G. W. Miller. · And the said G. W. Miller hereby agrees to render the said Geo. H. Eastman, trustee, all the assistance possible in his efforts to recover upon the notes and contracts against the present holder of the land, for which the notes in suit are given. [Signed] A. D. Bailie, Attorney for Plaintiff."   Mr. Bailie, called and examined by the defendant, testified as follows:   "Mr. Miller said something about some other parties being then interested in the land, and believed that he could get them to pay the notes.   He did not know much about the parties, but he thought they were good for the amount of the notes.   He said he would like to have a chance to get any advantage that it might be to him out of those parties, and asked if we would not defer action until he could see what he could do.   It was in the presence of Mr. Eastman—the three of us together. I asked Mr. Eastman what I should do, and in the presence of Mr. Miller, the defendant, he said that all that he wanted was money on the notes—all he wanted was the payment of the notes; that he didnn't care particularly where the money

came from, and if Mr. Miller could get any advantage by seeing those parties, or doing anything with reference to them, that he was perfectly willing that he should do it. But it was expressly stated by me and by Mr. Eastman in the presence of Mr. Miller that in no event would Mr. Miller be released from his liability to pay the notes in case a dismissal was had or further time given. That is substantially what was said. Mr. Miller seemed to think that he could get the money out of the other parties, from what he said; that he simply wanted a chance to try to do do it. Q. Was there not something said by Mr. Miller to you or to Mr. Eastman at that time, that he desired to be released from the notes? A. As I remember, Mr. Miller did not ask to be released from his liability upon the notes. In fact, I am confident that he did not ask to be released, but simply wanted to see if he could not get the amount of the notes out of the other fellow. He said he would go to work and find out right away and see what he could do. I think the other party's name was Dunbar. But Mr. Miller said that he believed that Mr. Dunbar had resold the land to some other party in Illinois, and he would inquire into that. Mr. Miller afterwards sent me his contract with Dunbar. This contract sent me by Mr. Miller is Exhibit No. 5, now shown me." Mr. Bailie, being called on behalf of the plaintiff, testified to the same effect, and repeated the statement that it was not agreed that the defendant should be released. The plaintiff, called on his own behalf, testified as follows: "Mr. Miller said that he had disposed of the land, and did not want to pay the notes; didn't want us to obtain judgment against him; that he wanted to have us try to get the money out of the parties then owning the land. He said he had a contract with Mr. Dunbar, the person to whom he had sold or traded, and that he had assumed in that contract to pay these notes. We talked the matter over, and told him we did not care who paid the notes, so long as they were paid; that, if he wanted to try to induce Mr. Dunbar to pay them, that we would

withdraw this suit and give him an opportunity, but that we-would not release him from his liability on the notes. That was the substance of the conversation." The defendant, tes-tifying in his own behalf, said: "After I got the notice that they had sued on these notes, I came down here to see them, and I went in there and told them I did not think that it was right for them to come onto me for these notes. I had traded that land off, and they had plenty of time to see whether the other party was all right, 'and, if you enter suit against me and get judgment, I think you can collect off from the other man quicker than you can off from me. I ain't got anything, only some Dakota land.' I told them they ought to go on the other man, and that I thought they could get it quicker; and I told them I would pay the costs if they would let me out of the case and give me that paper to protect me. He asked me — He said that I was to help all that I could to get it." Following this he was asked: "Q. What, if anything, was said with reference to their releasing you from the notes? A. They said they would go onto the other party. Q. What did they say, if anything, with respect to releasing, or what they would do with you? A. Well, you mean what they said that they would do with me? They said they would go onto the other party for it, and gave me a paper telling, I supposed, they let me out of the notes. Q. Was there anything said in that conversation as to whether or not you would be released from the paper? If there was anything said by any person, state what was said, and all that was said. A. They said they would not come on me again. Q. Who said that? A. Mr. Bailie." At the time of this conversation the plaintiff had the right not only to proceed against this defendant and land, but also against assignees of the contract who had assumed and agreed to pay the notes. It does not appear that the defendant was in position to render any special or valuable assistance in enforcing collection from these assignees, and, according to his petition, he did not know to whom the contract had been assigned, except to Dunbar. It would cer-

tainly have been a very strange and unusual agreement for the plaintiff to have made to release the defendant entirely from the notes upon such a consideration as the alleged promised aid and assistance. It certainly requires stronger evidence to convince the mind that plaintiff made such an agreement than that he agreed as claimed by him. The writing executed by Mr. Bailie as attorney for plaintiff, and which may be presumed to embrace all that was agreed upon, contains no provisions whatever for the release of the defendant. We think, in view of the unreasonable character of the agreement as claimed by the defendant, the silence of the writing as to any agreement to release, the positive testimony of Mr. Bailie and the plaintiff that there was no agreement to release, and the unsatisfactory testimony of the defendant on the subject, that the jury was not warranted in finding that there was an agreement as alleged by the defendant. We think such a finding is without support in the evidence. We are not unmindful of the rule so frequently announced that where there is a conflict in the evidence this court will not interfere with the verdict unless it appears to have been the result of passion and prejudice. "Where there is a conflict in the evidence the supreme court will not set aside a verdict unless it appears that it is the result of passion or prejudice." *Melhop v. Doan,* 36 Iowa, 630; *Moore v. Moore,* 39 Iowa, 461; *First Nat. Bank v. Charter Oak Ins. Co.,* 40 Iowa, 572; *Hall v. Ballou,* 58 Iowa, 585; *French v. Reel,* 70 Iowa, 122; *Gibson v. Fischer,* 68 Iowa, 29. "To authorize a reversal on the ground that the verdict is against the evidence, there must be such failure of proof as to raise the presumption that it was the result of passion or prejudice, and not of an intelligent and honest exercise of discretion by the jury." *McCormicks v. Fuller,* 56 Iowa, 43. We do not believe that this verdict was the result of an intelligent and honest exercise of discretion by the jury, but that it was the result of passion or prejudice. For this reason, we think the court erred in overruling the plain-

tiff's motion for a verdict at the close of the defendant's -est timony, and in overruling his motion for a new trial on the ground that the verdict is not sustained by the evidence. In view of this conclusion it is unnecessary that we consider other questions discussed.—REVERSED.