GEORGE STREVER, Appellant, v. JOHN WOODARD.

**Evidence:**   EXPERT TESTIMONY:  PERSONAL INJURY:   CAUSE OF PAIN.
1   Where a physician has qualified as an expert he may state whether
the physical condition of his patient might, with reasonable proba-
bility, be attributed to a certain injury; as, where plaintiff received
an injury to his head, it was competent for the physician to state
whether severe headaches and defective hearing were reasonably
attributable to the injury, although he should not be permitted to
state what in fact caused the same.

**Highways:** TRAVELERS: DUTY TO TURN OUT OR LOOK BEHIND: NEGLI-
GENCE. No duty rests upon the driver of a vehicle to exercise care
to avoid collision with another approaching from the rear, until he
has become aware of danger from that source. He is not required
to turn aside to permit the vehicle in the rear to pass, or to look
and listen before slowing or stopping his own, unless aware that the
approaching vehicle is in such close proximity as to constitute negli-
gence on his part to slacken his speed or stop.

**Special Interrogatories:** FAILURE TO ANSWER. Failure of the court
to require the jury to answer a special interrogatory before receiving
the verdict, which was not insisted upon at the trial, is not the sub-
ject of complaint on appeal.

**New Trial:** INADEQUACY OF VERDICT. Where there is uncontroverted evi-
dence of substantial damage in a personal injury action, a verdict
for $1 should be set aside as inadequate, and a new trial should
be granted.

*Appeal from Wright District Court.*—HON. C. G. LEE,
        -        Judge.

THURSDAY, JUNE 5, 1913.

ACTION for damages resulted in a judgment of $1 in
favor of plaintiff, from which he appeals.—*Reversed.*

*D. C. Chase,* for appellant.

*S. Flynn* and *McGrath & Archerd,* for appellee.

LADD, J.—The plaintiff was on his way to Woodstock
in a single-seated, one-horse buggy going south, on December
29, 1910. His horse was trotting along when an automobile
operated by Robinson approached from the opposite direc-
tion, and passed at a distance of between sixteen and twenty
feet as estimated by Robinson, or thirty or forty feet as testi-
fied by plaintiff. The defendant with his automobile, con-
taining four or five passengers, came up behind plaintiff's
rig, and when Robinson was about opposite, turned his car

to go between, when the fender struck the back wheel of the buggy, lifting that side up, and caused plaintiff, with the cushion and blanket, to slip or fall out on the ground, and the horse, becoming frightened, went on to Woodstock. The plaintiff testified that he did not stop but had slowed up, and was corroborated by the testimony of Robinson. The defendant testified that plaintiff stopped his vehicle suddenly, as though to converse with Robinson, and his testimony is corroborated by that of the persons riding with him. In this action, recovery is sought on the ground that defendant was negligent (1) in running his car at an excessive rate of speed, (2) in failing to give warning of his approach, and (3) in not keeping far enough from plaintiff's vehicle to safely pass it without a collision, and that the injury occurred without fault on the part of the plaintiff contributing thereto. The defendant denied having been guilty of any negligence, and alleged that the collision was due to the carelessness of plaintiff in suddenly stopping his horse without any notice or warning to the defendant. The evidence was such as to carry these several issues to the jury. This is apparent from even a casual examination of the record, and for this reason it is not necessary to review the evidence.

I. The plaintiff was attended by Dr. McCauliff. He testified that upon examination made January 3, 1911, he discovered a contusion on the left side of plaintiff's head, immediately above the temple, with swelling one and one-half or two inches in diameter, somewhat discolored and sensitive to the touch, and also a darkening or contusion of the left lip without much swelling, and that the patient said he suffered from a severe headache and was troubled with insomnia; that he called on him eight or nine times during that month, and that the headaches became more severe in a few days after his first call and the insomnia more difficult to overcome; that he was of opinion that the witness suffered severe pain from his injuries, and that after the time men-

1. EVIDENCE: expert testimony: personal injury: cause of pain.

tioned he was consulted by the plaintiff about once a week
for another month; that he complained of pains in his head
during the entire time and of impairment in his hearing and
sight. He was then asked "whether or not a violent blow
upon the head or concussion from falling, such as would pro-
duce this swelling that you speak of on the head, might or
might not have any effect upon the hearing, or the head
itself, of a permanent nature." "A. It might." "Q. To
what did you ascribe professionally the continuance of these
headaches *described* that Mr. Strever complains of?" An
objection as incompetent, immaterial, and irrelevant was sus-
tained. "Q. Considering the history of the case as detailed
to and what you observed of *those* injuries in January, what
would you say was the cause of these headaches?" A like
objection was sustained. "Q. State whether or not a violent
blow on the head in the place where you saw his injury
would cause continual headaches such as Mr. Strever had or
not." An objection as leading and suggestive, incompetent,
and immaterial was sustained. "Q. I wish you would now
state from your knowledge of the history of the case and
physical condition of Strever as a physician, whether these
pains that you have described or the headaches were or were not
the result of injury upon his head, that you have referred to in
your testimony." Same objection was sustained. "Q. I now
*refer* to all of this." A like objection was sustained, and the
court remarked: "This is a question for the jury; they must
draw that conclusion, or they must fail to draw it." Excep-
tions were saved to each of the above rulings, and all were
erroneous. They called for opinions which it was competent
for an expert, if possessed of sufficient information, to answer.
The witness had fully qualified, and the rule is well estab-
lished that though a physician may not testify what the cause
of an injury actually was, his testimony as to what might
have, within reasonable probability, caused it is received.
Thus as to whether an injury might have resulted from an
alleged concussion by being thrown from a carriage, *Quinn*

*v. O'Keeffe,* 9 App. Div. 68 (41 N. Y. Supp. 116), or from a blow, 12 Am. & Eng. Ency. Law (2d Ed.) 447. In *Barker v. Ry.,* 51 W. Va. 423 (41 S. E. 148, 90 Am. St. Rep. 808), testimony of a physician that the plaintiff's condition might have been caused by shock, a fall, or anything that produces a shock to the spinal column was held admissible. See, also, *Bennett v. Fail,* 26 Ala. 605; *Thompson v. Bertrand,* 23 Ark. 730; *Mo. P. Co. v. Lovelace,* 57 Kan. 195 (45 Pac. 590); *Oliver v. Ry.,* 65 S. C. 1 (43 S. E. 307); *Matteson v. Ry.,* 62 Barb. (N. Y.) 364. The subject was one not familiar to the jury, and it was competent to call for expert opinion to aid in tracing the casual connection between plaintiff's ailments and the efficient cause; and, as a nervous temperament and a fall from a load of tile nearly four months previous were suggested in cross-examination as such cause, the testimony of the physician who attended him during his illness as to what might have occasioned his suffering was material, and should not have been excluded. The inquiries were not vulnerable to the objection as leading, nor did they call for an opinion as to the ultimate issue to be determined by the jury. Whether he was in fact injured by the fall from the buggy would necessarily be included in the verdict of the jury, but was not determinative of the case.

II. In an instruction otherwise unexceptionable, the court told the jury that if an ordinarily careful and prudent man, situated as plaintiff was and in like circumstances, would

2. HIGHWAYS: travelers: duty to turn out or look behind: negligence.

"have looked and listened or given warning of his intention to stop in the highway, or would have driven out of the beaten track before stopping, and you further find that the plaintiff did suddenly stop in the highway, but did not look, listen, or give warning to the defendant of his intention to stop, and the collision of which he now complains was thereby occasioned, then the plaintiff was guilty of contributory negligence, and he cannot recover." The converse also was stated. The plaintiff testified that he drove out to the

side of the road, and that he did not stop but merely slowed up. For this reason the instruction might be improved by mentioning these matters hypothetically. Nor are we content with the suggestion of an obligation on the part of a traveler that he must, Janus-like, keep an outlook in the rear or have driven from the portion of the highway along which his vehicle was moving. He was under no obligation to yield any portion of the highway to allow defendant to pass. *Elenz v. Conrad,* 123 Iowa, 522. Only to avoid a collision reasonably to be apprehended is the foremost traveler bound to turn to one side. His duty is to keep a lookout ahead, and only when he is aware of a vehicle coming up from the rear, and near that which he is driving, is he charged with duty of exercising ordinary care in the management of his own so as not to injure that behind. *Delfs v. Dunshee,* 143 Iowa, 381.

If there be not sufficient room it is said to be 'the duty of the foremost traveler to afford it, on request made, by yielding an equal share of the road, if that be adequate and practicable; if not, the object must be deferred till the parties arrive at ground more favorable to its accomplishment.' But it is perhaps doubtful whether such duty can be deemed an absolute legal duty, and even if it should be so considered, the failure of the leading traveler to permit it by turning out to one side will not justify the other in purposely running into him or attempting to pass at all hazards. The only rule of general application that can be laid down is that he who attempts to pass another going in the same direction must do so in such manner as may be most convenient under the circumstances of the case, and if negligent, and damage results to the person passed, the former must answer for it, unless the latter by his own recklessness brought the disaster upon himself. (2 Elliott on Roads & Streets, section 1084.)

The party coming up from behind must exercise reasonable care to keep his vehicle under control, and far enough in the rear to avoid the contingencies of decreasing speed, stopping and the like. He is in a situation to do this, and the law casts that burden upon him. Whether plaintiff knew

defendant was immediately behind his buggy with his automobile, and so close that if he stopped it would likely run into his vehicle, was an issue to be submitted to the jury, and if such was the situation and plaintiff was aware of it, undoubtedly he took the risk in suddenly stopping, if he so did, and cannot recover; but if he was not aware that defendant was in such proximity, or if he merely slowed down the speed at which he was driving, then he was not negligent, regardless of whether he looked back or listened. Though the reference to looking and listening, guarded as it is in the instruction, may not constitute reversible error, it may as well be avoided on another trial.

III. The jury failed to answer one of the special interrogatories submitted, and error is predicated on the court receiving the verdict without exacting an answer. As plaintiff does not appear to have insisted on an answer being required, he cannot be heard to complain. *Huss v. Ry.*, 113 Iowa, 343; *Mayo v. Halley*, 124 Iowa, 675; *Andrews v. Ry.*, 77 Iowa, 669.

3. Special Interrogatories : failure to answer.

IV. The jury returned a verdict of $1, and the plaintiff asked that this be set aside as inadequate. If there were proof of substantial damages, uncontroverted, the motion for new trial should have been sustained. *Tathwell v. Cedar Rapids*, 122 Iowa, 51; *Ward v. Light Co.*, 132 Iowa, 581. That plaintiff was injured was uncontradicted. He was precipitated from his buggy to the ground, and taken immediately to Dr. Smith's office and examined. He found no bones broken, and did not remember of any contusion of the skin, but testified that he "was in a dazed condition. The man undoubtedly had had a fall, but I did not discover any lesions." Upon calling on him a week or two later, the witness said: "All that was wrong was an intense headache and considerable nervousness. I do not know what caused those conditions. . . . The nervousness that I discovered on my call to his

4. New Trial : inadequacy of verdict.

place might have been due to a number of different causes. I thought he was suffering from grippe and the shock or contusion of this accident.'' The witness then explained that there might be concussion without external evidence of it; that the time of the examination in his office he complained of his chest, head, and back, that he ''attributed part of his grief to the accident, but he could have had very much the same condition without any accident at all. It was impossible to tell the real cause of the headache and nervousness''—and explained that he had complained of sleeplessness a year or two before. The testimony of Dr. McCauliff concerning his condition has been stated. He testified further that he attributed his nervousness and sleeplessness to the injuries he found when called to treat him. That plaintiff was confined to his house a part of the time, requiring the care of a nurse for several weeks, was testified by plaintiff, his wife, a son and daughter, and an employee. Indeed there is no controversy on this point, though two physicians, Carver and Sams, examined him at the instance of defendant October 25, 1911, and discovered no trouble with him save a catarrhal condition of the middle ear. He had fallen from a load of tile in September previous, but his testimony that he had recovered therefrom was not disputed. For medicine and medical attendance as a result of this injury he had paid $106.75. There is no room in this record for saying that he did not suffer substantial injuries in falling from the buggy, and that this expense was occasioned thereby, and for this reason, if entitled to anything, he should have been allowed substantial damages. On this ground the motion for new trial should have been sustained. —*Reversed.*