S. J. MADISON, Appellant, v. FRED HOOD et al., Appellees.

JANUARY 23, 1929.

*Wisdom & Wisdom,* for appellant.

*E. L. Carroll,* for appellees.

DE GRAFF, J.—This action is based upon a violation of a statutory duty on the part of the defendants. Section 2312, Code of 1897. There can be and there is no question about this. It was the duty of the defendants to restrain the animal that caused the alleged damage. See *Hansen v. Kemmish,* 201 Iowa 1008, *loc. cit.* 1011; *Hickey v. Freeman,* 198 Iowa 465.

A brief analysis of the facts is first in order. The defendant Fred Hood, residing on a contiguous farm to that of plaintiff, was the joint owner with his wife, Florence, of a roan bull  which was kept on the Hood premises just across the road from the plaintiff's farm, about one mile west of Creston, Union County, Iowa. These matters are admitted of record by the defendants. Plaintiff (appellant), a dairyman and farmer, was the owner of a herd of Guernsey cattle, among which were two thoroughbred registered cows named Summit Lady and Summit Daisy. It is admitted that plaintiff was the owner of said cows, and the evidence is conclusive that the said cows were thoroughbred registered Guernseys. There can be no question, under this record, that, on or about September, 1921, the defendants' bull was not restrained, but was running at large on two consecutive days, and on plaintiff's premises. Undisputed testimony of eyewitnesses establishes this fact. Furthermore, the defendant owners had notice and knowledge of the roamings of the bull, since the plaintiff informed the defendants of the fact

that the said bull, on these two different days, respectively, was on the plaintiff's premises, and the said male animal was .returned to the defendants' premises. Plaintiff informed Hood of all that occurred, and that the cows were pure blood.

Upon the last visit of said bull, and immediately after its return to the defendants, the defendant and plaintiff Madison had a conversation in which the question of damage caused by said bull was discussed, and it is the claim of the defendant that at said time he told the plaintiff Madison that he did not know what the damage would be, since he did not know whether the cows respectively would give birth to a calf by reason of the contact with the said bull. As to the fact whether the said bull had access to the two thoroughbred cows of plaintiff, it may be said that it is established by uncontradicted and unimpeached evidence, and by eyewitnesses, that one of these cows, Summit Daisy, was served by the defendants' bull, and it is further established that no other male animal, prior or subsequent to said date, had access to this female. It is also undisputed that, on the preceding day, the said bull had trespassed across the line separating the respective farms, and was in the pasture where the said pedigreed cows were kept, and that the bull was driven from said pasture into the public highway. A partition-fence line is not involved. In this connection, it may be stated that the plaintiff kept only registered male animals of the Guernsey class, but in a different pasture from the pasture in which the cows in question were kept at that time.

It is difficult to conceive, under the evidence introduced,— one contact of the bull being established by eyewitnesses, and the testimony being undisputed, and the contact of said bull with the other cow by circumstantial evidence,—how the jury could reach a result and make a finding contrary to plaintiff's theory of the case, and especially so since the evidence is undisputed that, upon the termination of the usual period of gestation after the trespassing in question occurred, each of these cows gave birth to a calf with the roan markings of the alleged paternal ancestor, and neither of said calves had any markings or indications of a pure-bred Guernsey calf. The attention of appellee Hood was called to these calves shortly after their birth.

A court might well take judicial notice of the instincts of the male animal in question, and that, true to the instincts of its

genus and species, *bos taurus*, it would leave, under the slightest provocation, the precinct of its bovine domicile and invade the premises of Summit Lady and Summit Daisy. This, beyond peradventure of doubt, it did do.

What were the primary allegations of plaintiff's petition? It is alleged that the defendants "were wholly negligent at the time and place hereinbefore mentioned, in permitting such animal to run at large, unrestrained, and to escape from the premises occupied by said defendants and to enter upon the premises occupied by this plaintiff," and that "the defendants, then and there being the owner of the said male animal, and having him in their custody on the premises occupied by them, near to the premises of the plaintiff, unlawfully and contrary to law permitted the said male animal to leave and wander away from said premises of the defendant, unattended and at large," and that, as a result of the pleaded facts, damages resulted to the plaintiff. No one questions that a jury question was presented in this case, although, as has been pointed out, the major facts were either admitted or conclusively established. There was, however, the question as to the quantum of damages which the plaintiff suffered.

In passing, it may be observed that there is but one specification of error presented on this appeal, and that question arises by reason of the overruling of plaintiff's motion for a new trial, the jury having returned a verdict in favor of the defendants. This means a verdict of "no damage."

It may be well to recite at this point, before entering upon more important considerations involved herein, the grounds upon which the plaintiff based his motion for new trial and for the setting aside of the verdict returned. They are: (1) That the verdict is not sustained by sufficient evidence; (2) that it is not sustained by any evidence; (3) that the greater weight of evidence was in favor of the plaintiff; (4) that all of the evidence was in favor of the plaintiff; (5) that the verdict is contrary to law and contrary to the instructions given to the jury by the court; (6) that the jury failed to properly consider and weigh the evidence; (7) that the verdict is based upon speculation and conjecture; (8) that the verdict is a result of passion and prejudice, and could not be the result of an unprejudiced consideration of the evidence; (9) that the jury wholly disregarded the

instructions and wholly disregarded the evidence. We have pointed out heretofore that the instructions given by the court in this case were not challenged in any manner or in any particular. The instructions, therefore, became the law of this case.

The rule of damage given in the instructions is the law of this case, for the reason previously stated. It is a correct rule of damage, as will be presently shown. This case is not concerned in any way with the question of the "taint" of these cows (whether true or untrue), caused by the contact of the bull with them. Laws of physiology and biology are not before us. Such a matter is not referred to in the record facts, in the court's instructions, or in the unchallenged rule or measure of damage given by the court. It is not involved in this cause.

The trial court placed the burden upon the plaintiff to prove the material matters heretofore mentioned in this opinion, and specific reference was made in the instruction to such facts as were admitted of record by defendants or conceded by the parties. The instruction given by the court as to the measure of damage, whether right or wrong, became the law of this case. Fortunately it was a correct instruction, and has heretofore been approved by this court several times. In *Burleigh & Jackson v. Hines*, 124 Iowa 199, the damages were predicated on negligence by reason of the failure of the owner (appellant) of a bull to restrain the animal from running at large. In affirming the judgment of the lower court, it is said:

"The verdict was based on evidence tending to show the depreciation in the value of the heifers as thoroughbred and registered animals and for breeding purposes, by reason of their having been served and gotten with calf by an ill-bred and unregistered bull. This depreciation in value resulted at once on their being thus served, and the fact that subsequently the plaintiffs disposed of or lost one of the heifers would not affect their right to recover damages for the injury to such heifer. The damage was complete when the injury was done."

The evidence in *Crawford v. Williams*, 48 Iowa 247, discloses that the owner of a thoroughbred cow commenced an action for damage against the owner of an unpedigreed bull which had been permitted to run at large and had gotten plaintiff's

cow with calf. The measure or rule of damage was involved in the *Crawford* case, supra. It is said, in substance, in the opinion that the damage applicable to such a case cannot properly be restricted to the merely physical injuries which an unrestrained bull may occasion, and that the importance to the state of improvement of all kinds of stock can scarcely be overestimated. It is further said that the intelligent public spirit which employs itself in the improvement in all kinds of stock ought to be encouraged and protected, and that much skill and intelligence are requisite upon the part of stock breeders in selecting the most desirable crosses so as to transmit the best qualities to the progeny.

"If he is deprived of the right of making this selection, he ought to be fully compensated for the injury inflicted. * * * It is evident that, to a breeder of fine stock, a thoroughbred heifer with calf to a bull of impure blood would be of less value than one with calf to a thoroughbred, or not with calf at all. *The difference in value of the heifer for the purpose of breeding fine stock before meeting defendant's bull and afterward constitutes the proper measure of plaintiff's damages.*"

The italics are ours.

The same legal principle involving the rule or measure of damage is recognized in *Howard v. National French Draft Horse Assn.,* 169 Iowa 719. The opinion in this case was written in 1915 by the late and lamented Justice Weaver. It is said therein:

"The principle here applied as to the measure of the recoverable damage is not altogether unlike that applied by this court in *Crawford v. Williams,* 48 Iowa 247, where suit was brought by the owner of a registered heifer against the owner of an unregistered bull which was unlawfully allowed to run at large and come in contact with the heifer. The plaintiff was there allowed to recover, not the difference between the inferior calf produced and the value which it would have had, if eligible to registry, *but the difference in the value of the heifer as a breeder of fine stock before meeting the unregistered bull and its value immediately thereafter.*"

The italics are ours.

It is pleaded and conclusively shown in the case at bar that the plaintiff was a breeder of thoroughbred Guernsey cattle, and that Summit Daisy and Summit Lady, the cows in question, were thoroughbreds and registered, and were kept for breeding purposes, as well as for prize exhibition, and that said cows were thoroughbred Guernseys of extraordinary value because of their quality and breeding. In the instant case, the court instructed the jury that the measure of damage is the difference between the reasonable cash market value of said cows, or either of them, as thoroughbred registered cows, for breeding purposes, immediately before the defendant's bull served them, and the reasonable cash market value after service by the said bull; and the court added in this instruction that such depreciation in the value of said cows, or either of them, must be the result of the contact of said male animal with said cows, and "not for any other reason." The evidence is undisputed as to the depreciation in value, and it was for the jury to determine the amount of that depreciation, which represented the damage suffered by the plaintiff.

The witnesses who testified as to the value before and after the contact of said cows with the bull in question were competent to speak on this question. For example: One witness testified that the reasonable value of Summit Daisy prior to such contact was $1,000, and that the reasonable value of the same cow in the same place under the same conditions the day after it conceived and got with calf with defendants' animal was $750. The same witness testified that the difference in market value of Summit Lady before and after the contact with the defendants' bull was $250.

Another witness, thoroughly qualified to speak as to the value in depreciation under the circumstances of this case, testified that the damage or loss by depreciation as to Summit Lady was $200, and as to Summit Daisy was the sum of "$200, anyway,—maybe more."

Another qualified witness testified that a breeder of purebred Guernsey cattle would not want to buy Summit Lady or Summit Daisy, under the circumstances of being bred to a bull of the kind in question, and, in response to a direct question as to the reasonable depreciation in value of one cow, said it would be $250, and as to the other, $200.

There is absolutely no evidence offered by the defense contrariwise as to the value of these animals or of the difference in value of these animals before and after access to the defendants' bull. In fact, defendants offered no evidence at all in these particulars. The defendants pleaded a general denial to the petition of plaintiff, as amended.

It must be borne in mind that in this case we are not dealing with a rule governing nominal damages, since no damages whatsoever were allowed. Had the jury, however, returned a verdict for nominal damages, under uncontroverted evidence of actual or substantial damages, Iowa precedent would not be lacking to sustain a motion to set aside the verdict and for new trial. See *Strever v. Woodard*, 160 Iowa 332, with cases cited. Nor are we concerned in this case with the rule that a court may, under proper circumstances, reduce the amount of the verdict if it is deemed excessive. An all-sufficient answer to the application of this rule is the same: that no damages whatsoever were allowed.

Several of the grounds upon which plaintiff based his motion for new trial are worthy of consideration, but we deem it unnecessary to discuss them *in extenso*. The pertinent question is, Did the trial jury have the right and privilege to ignore both the facts and the law in this case and return a verdict of "no damage?" It may be conceded as elementary that the finding of a jury is generally binding upon a reviewing court. However, if the evidence is sufficient to raise the reasonable inference that the verdict is the result of passion and prejudice, or if the appellate court, on reasonable ground of belief, determines that an erroneous verdict has been reached, a new trial will be granted. We can say in this case, as in *Eastman v. Miller*, 113 Iowa 404:

"We do not believe that this verdict was the result of an intelligent and honest exercise of discretion by the jury, but that it was the result of passion and prejudice."

The following cases involve the correctness of the ruling of the trial court in granting a new trial: *Woodbury Co. v. Dougherty & Bryant Co.*, 161 Iowa 571; *Porter v. Madrid State Bank*, 155 Iowa 617.

It is also true that the credibility of the witnesses is a mat-

ter for the jury; but, as said in *Graham v. Chicago & N. W. R. Co.*, 143 Iowa 604, the testimony of a witness may be so impossible and self-contradictory that (p. 615) "it should be deemed a nullity by the court." The writer has discovered no case with facts analogous to the instant case, and with instructions which, by reason of the absence of any exceptions thereto, became the law of the case, in which any court has permitted a verdict of "no damage" to stand, where the evidence and an unchallenged rule of damage disclosed that the plaintiff was entitled to substantial damage.

We have no quarrel with the rule that is sometimes given, as in *Hoyt v. Chicago, M. & St. P. R. Co.*, 117 Iowa 296 (p. 301), that the jury has the right to use its own knowledge "of the values of lands, the operating of railroads, and of affairs generally, in connection with the testimony as to the values and damages which has been given by the witnesses." The trial court in the *Hoyt* case, supra, limited the meaning of the instruction given, by the following language:

"By this is meant that you are not obliged to rely wholly upon the opinions of the witnesses as to the value of this land or as to the damages, but that, in connection with such opinions, you may use and be guided by your own judgment on such matters."

This statement of law, as given in the instruction and approved by the court (supra), is in no sense controlling in the case at bar. This rule does not constitute a warrant for a jury to disregard an unchallenged and correct rule of damage and to ignore absolutely the only evidence offered in the case bearing upon the cause of the damage and quantum of damage suffered, and especially so as no evidence of value or of depreciation of the values of the cows was offered by the defendants. The plaintiff was entitled to a verdict in some amount.

The instruction on which comment is made, and as found in the *Hoyt* case, supra, was not given to the jury in the case at bar, but the trial court did tell the jury that they were the sole judges of the credibility of the witnesses, and gave the usual statement of the matters which could be taken into consideration in determining their credibility and the weight to be given the evidence. The jury was further told that, "in determining any

of the questions of fact presented in this case, you should be governed solely by the evidence introduced before you,'' and that the jury should not indulge in any speculation or conjecture as to what might have been proved, or what might have been shown to be true, and that ''all conclusions drawn should be based solely on the evidence before you.'' The above instruction became the law of this case, since no exceptions whatsoever were taken to it nor to any other instruction. In an instruction given in *Youtzy v. City of Cedar Rapids*, 150 Iowa 53, embodying the same language as in the *Hoyt* case, supra, this court said:

''They [the jury] are not told that they may disregard the evidence, or to fix the value of the property arbitrarily in accordance with their own notion.''

This statement finds expression several times in the decisions of this court. In *Fowle v. Parsons*, 160 Iowa 454, it is said: ''The jury may not arbitrarily, without cause, disregard them [opinions of experts].'' It is further said:

''The matter is to some extent under the control of the court, after verdict. If the finding is too large, it may be reduced; if so small that justice has not been done, the court may, in its discretion, grant a new trial. *Foley v. Brocksmit*, 119 Iowa 457.''

It is ever to be kept in mind in the instant case that, in spite of the evidence and a correct rule of damage, the jury arbitrarily returned a verdict of ''no damage,'' when the record discloses to any fair-minded person that a substantial damage was suffered by the plaintiff. The most that can be said for the rule in the *Hoyt* case, supra, and of cases in which a similar instruction was given by the trial court, is that, in considering the evidence and arriving at the truth of the matter in controversy, which involves a question of value, and calls for expert opinion evidence, the jury has the right to use its own knowledge of affairs generally in connection with the testimony as to the values which had been given by the witnesses. This simply means, and it was so held in *Hubbell v. City of Des Moines*, 166 Iowa 581 (p. 589), that the jury is not obliged to rely wholly upon the opinions of the witnesses as to value, but, in connec-

tion with such opinions, the jury may be guided by their own judgment on such matters; but the jury cannot disregard the evidence, and fix the value of the property in question "arbitrarily, or in accordance with their own notion." In no case in our official decisions has this court applied or indicated that the rule under discussion warrants a verdict of "no damage" by virtue of the rule under the facts or law analogous to the instant case.

We conclude that plaintiff's motion for a new trial should have been sustained. The judgment entered is—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.