JULIUS MENDENHALL, Appellant, v. FRED STRUCK, Appellee.

■ 

March 12, 1929.

*Lundy & Bateson,* for appellant.

*Elvin J. Ryan,* for appellee.

De Graff, J.—The petition, filed January 21, 1927, alleged that, about November 1, 1926, the defendant, Fred Struck, came to the edge of plaintiff's premises, and, without consent of plaintiff, knowingly, intentionally, and maliciously killed one female dog named "Bird," which was then the mother of five unweaned pups. Subsequently, about the 17th day of December, 1926, the defendant again came upon the premises, against the will of plaintiff, forced himself into plaintiff's house, and drove five little pups outside, and then and there knowingly, intentionally, willfully, and maliciously shot and killed them; that

he also drove, on said date, two other rat terrier dogs from the house of the plaintiff, and without provocation maliciously shot and killed them. Plaintiff alleges that the actual and exemplary damages suffered by him are not less than $500, and asks judgment in the sum of $500. The answer of the defendant is a general denial.

There is no dispute in the evidence that the defendant did kill the dogs in question, and did enter the plaintiff's home on the second visit, over plaintiff's protest, and drove said dogs from plaintiff's house before killing them. Upon his first visit to the plaintiff's home with a shotgun, the defendant killed the mother of the unweaned pups, which at that time were in the house. The pups were less than three months of age. Upon the defendant's second visit, he was accompanied by his brother and his hired man, who acted under the defendant's instructions and directions. Defendant informed the plaintiff that he had come to kill the plaintiff's dogs. Plaintiff protested. Defendant's helpers in this wholesale destruction of the dogs were each armed with a deadly weapon,—one a twelve-gauge shotgun, the other a rifle. At that time, they went into plaintiff's house and drove out the two older rat terrier dogs, and they shot at them as they ran out, "coming very close to shooting me [plaintiff]." At that time, one of the dogs was killed; the other got away temporarily.

These invaders of the plaintiff's premises then left, to track the dog that escaped; but they came back, the same morning, and under the defendant's directions, his brother and his hired man were told to go into plaintiff's house and "fetch out" the dogs. They did bring out the five unweaned pups and shot them; and, as disclosing the brutality of these dog killers, one of the little pups was thrown up in the air, and was shot as it came down.

All of these dogs were small, and the largest weighed but five or six pounds. The defendant on the witness stand said that he had the fellows (meaning his brother and the hired man) "go into the plaintiff's house and bring the dogs out. I don't know how many dogs were killed that day, but approximately six or seven or eight."

The defendant placed a valuation upon each of these dogs; and as to the five pups, he testified that four of them were

worth $5.00 each, and the little pup named "Bonnie" was reasonably worth $50. This evidence is undisputed. A witness who is competent by reason of experience and knowledge of the character of a dog may testify to its value although there was no actual market value for such a dog in that vicinity. *Ellis v. Oliphant*, 159 Iowa 514.

The only defense the defendant offers for his acts is that the dogs in question did not carry a license tag, and that, under the statute, by reason of the absence of the license tag on said dogs, they did not constitute property, and the defendant, under said section of the Code, had the right to kill them. Section 5448, Code of 1924. The statute in question reads as follows:

"It shall be lawful for any person, * * * to kill any dog for which a license is required, when such dog is not wearing a collar with license tag attached as herein provided."

It may be conceded, for the purposes of this case, that the statute governing the licensing of dogs is an exercise of the police power by the general assembly of Iowa. The police power of the state has been used to regulate and control property in dogs to a greater extent, perhaps, than property in any other class of domestic animal. The legislature, in the definition of administrative process, of course is bound to exercise as much due process of law as in judicial process; and in the exercise of the police power as to the law in question, it may be said that certain restraints and burdens were imposed, to secure the general comfort and welfare of the state, and especially a certain class of citizens of the state, to wit, the agricultural class. *Jenkins v. Ballantyne*, 8 Utah 245 (30 Pac. 760).

In the Utah case, supra, the question involved the validity of a "dog law," and whether or not the defendant was justified in killing plaintiff's dog while it was running at large, without being registered.

A very good review of the matter under discussion is found in *Sentell v. New Orleans & C. R. Co.*, 166 U. S. 698 (1897). The case involved a Louisiana statute in which it was recognized that there is only a conditional property in dogs. That is to say, if the dog or dogs are given in by the owner to the assessor,

and placed upon the assessment records, they are entitled to the same legal guaranties as other personal property; although, in actions for the death or injury, the owner is limited by the statute, in the amount of his recovery, to the value fixed by himself in the last assessment. It was only under such restrictions that dogs were recognized as property. It may be said in the instant case that only under the conditions prescribed by Chapter 276, Code of 1924, may dogs be viewed as property.

Under the common law, dogs were recognized as property (see *Anson v. Dwight*, 18 Iowa 241), but fewer legal rights and protection were extended to them than to other domestic animals, and they were not the subject of larceny. Later, however, many states viewed dogs as property and as chattels, subject to larceny. The state of Iowa did, under the Code of 1873, Section 3902. *Hamby v. Samson*, 105 Iowa 112.

Our statute provides that "dogs kept in kennels and not allowed to run at large shall be taxed as personal property." Section 5446, Code of 1924. The legislature did give the privilege to a person to kill a dog over a certain age, for which a license tax is required, when such dog is not wearing a collar with license tag attached. There is a further limitation in the statute that "all dogs under three months of age" shall be deemed property. Section 5447, Code of 1924. It follows, therefore, that the five unweaned pups in this case constituted property owned by the plaintiff.

There is one thing certain: that the general assembly, in the enactment of Section 5448, did not contemplate, intend, or give the privilege to any person to invade the premises or the home of any owner of a dog and kill said dog. The method adopted by the defendant bears on the question of malice. Clearly, the legislature never intended by this statute to permit an illegal or wrongful act, in order to exercise the privilege granted. The plaintiff did not predicate any damages by reason of the trespass committed by the defendant.

The instant chapter on dogs and licensing thereof (Chapter 276, Code of 1924), is the successor of Section 458, Code of 1897, and Supplement, 1913. Under Section 458-c, Code Supplement, 1907, as amended by the Acts of the Thirty-third General Assembly, Chapter 32, there was a provision that, when any per-

son was damaged by the killing or injury of any domestic animal by a dog, the board of supervisors, on the compliance of certain provisions on the part of the claimant, might find and enter of record the value of each animal killed, or the amount of damage done thereto; and the statute authorized the auditor of the county to issue warrants not exceeding 90 per cent of the amount of damages thus found, and provided that the same should be paid by the county treasurer out of the domestic animal fund. Under that statute, it was held that a person may lawfully kill a dog *only* when it was caught in the act of worrying or killing sheep or other domestic animals, so that the killing of a dog of another when it was suspected of killing sheep, but not caught in the act, was not within the protection of the statute. *Ellis v. Oliphant,* supra; *Rogers v. Wolf,* 195 Iowa 153.

The domestic animal fund still prevails. Chapter 277, Code of 1924. The license fees that are collected under the law involved in this case (Chapter 276) are turned into the domestic animal fund, for the purpose declared under Chapter 277, Code of 1924. In the case at bar, there is no competent evidence that the rat terriers in question ever worried, chased, maimed, or killed any domestic animal or fowl.

Plaintiff had grounds to pray for both actual and exemplary damages. Malice does not necessarily mean spite or hatred, but it means the doing of an actual wrong, in itself without just cause or excuse. *State v. Decklotts,* 19 Iowa 447; *White v. Spangler,* 68 Iowa 222.

Regardless of these preliminary statements, the judgment entered must be reversed, for the reason that, as to the unweaned pups, they were not within the prohibition of the law. They did constitute property. The value of these pups is undisputed, and the jury was not privileged to arbitrarily, and in accordance with their own notion, say they had no value, and consequently return a "no-damage" verdict.

Even if a nominal damage had been returned, this court, under the precedent of its decisions, could set aside the verdict. *Strever v. Woodard,* 160 Iowa 332; *Madison v. Hood,* 207 Iowa 495. It is said in the *Strever* case, supra:

"There is no room in this record for saying that he did not suffer substantial injuries in falling from the buggy, and

that this expense was occasioned thereby; and for this reason, if entitled to anything, he should have been allowed substantial damages. On this ground, the motion for a new trial should have been sustained.''

A ''no-damage'' verdict cannot be viewed as a verdict for nominal damages. There is a class of cases in which the court treats a nominal finding by a jury as a verdict for the defendant. *Rubinson v. Des Moines C. R. Co.,* 191 Iowa 692. Another group of cases was decided under Section 2839 of the Code of 1873, which provides:

''A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, where the damages equal the actual pecuniary injury sustained.''

Unquestionably, some of the older cases are influenced by this section. The current Code does not contain this provision.

Where there is uncontroverted evidence of substantial damage in a tort action, a verdict for nominal damages of $1.00 should be set aside as inadequate, and a new trial should be granted. *Strever v. Woodard,* supra. The question involved might arise either from the fact that (1) the damages are inadequate, or (2) the verdict is contrary to the evidence. We have held that a motion for a new trial should not be sustained on the ground that the damages are inadequate unless the damages are so clearly inadequate and contrary to the evidence as to indicate passion and prejudice. *Hall v. Chicago, B. & Q. R. Co.,* 145 Iowa 291.

In the instant case, the uncontroverted evidence establishes the fact that the plaintiff did suffer actual or substantial damages from the killing of his pups. The principle involved is that a jury may not disregard the evidence and say that the property has no value, and, in an arbitrary manner or in accordance with their own opinion, say ''no damage.'' This is the doctrine of *Youtzy v. City of Cedar Rapids,* 150 Iowa 53.

In applying the rule as to probative value of expert testimony, it is said, in *Fowle v. Parsons,* 160 Iowa 454: ''The jury may not arbitrarily, without cause, disregard them.'' The thought we emphasize is that, in spite of the evidence, uncontradicted, as to the value of the pups, and in disregard of a

correct rule of damage, the jury did, in the instant case, return a verdict of "no damage."

One proposition assigned by appellant may be given brief mention. It was stipulated by counsel that neither appellee nor those who acted with him under his direction in the killing of the dogs possessed at the time a hunter's license. The court, upon the objection of the appellee, excluded the stipulation. The statute provides that no person shall hunt, pursue, kill, or take any wild animal in any manner without first procuring a license. Section 1718, Code of 1924. The purpose of this statute is obvious, but it is not applicable to the facts of the case at bar. True, the former statute (Acts of the Thirty-ninth General Assembly, Chapter 140, Section 7) classified an unlicensed dog as a "wild dog." This was a mere matter of terminology, but the words would find little justification in a lexicon or in common usage. It is sufficient to state, under the instant facts, that the stipulation was properly excluded.

For the reason heretofore indicated, the motion for a new trial should have been sustained. The judgment entered is— *Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, KINDIG, and GRIMM, JJ., concur.

STEVENS and WAGNER, JJ., dissent.