## FRED DELFS v. W. N. DUNSHEE, Appellant.

**Evidence:** EXPERT TESTIMONY: ADMISSIBILITY. One who has handled and for years observed the habits and conduct of horses when frightened, is competent to testify as an expert on the subject; and where defendants liability turned on the question of the fright of plaintiff's horse from his automobile, the evidence was admissible.

**Evidence:** CONCLUSION. Where the defendant, in an action for damages resulting from the fright of plaintiff's horse at his automobile, had stated what occurred, his opinion as to whether there was anything in the appearance of the horse or position of plaintiff to indicate that he might lose control of the horse or was in danger of having trouble, was properly refused. And the question of whether defendant could have gotten further from plaintiff's rig without going upon the street car track, was rightly refused, as from the proven measurements it was a simple matter of computation.

**Automobiles:** OPERATION: REASONABLE CARE: STATUTES. Sections 8 and 9, chapter 53, Acts 30th General Assembly, simply define the duty of the operator of an automobile upon request or signal, they do not relieve him of the duty of exercising reasonable care for the safety of others upon the street; and the question of reasonable care, depends to some degree, upon the speed, size, appearance, manner of movement, etc., of the vehicle, as well as the means of locomotion of others on the highway.

**Same:** REASONABLE CARE. Where the evidence tended to show that defendant's car approached plaintiff from the rear, was within a few feet of his horse when passing and turned in front of him but a short distance ahead, and that a well broken horse is likely to

be frightened under such circumstances unless some warning is given. *Held,* the question of whether defendant exercised reasonable caution in thus passing plaintiff's horse, was for the jury.

**Same:** NEGLIGENCE: INSTRUCTIONS. To approach a team from the rear with an automobile running at an excessive rate of speed, and to pass within a few feet without giving any warning, may constitute negligence; so that nearness of the machine in passing and failure to give warning of its approach, are proper to be considered in connection with the speed of the car, in determining its negligent operation. And when the evidence was such that the jury might have found that defendant, upon passing without giving warning, turned the machine immediately in front of plaintiff's horse, and plaintiff had testified that had warning been given he could have controlled his horse, the question of whether defendant was negligent in so doing, was properly submitted.

**Same.** Where the evidence justified a finding, that after defendant had passed plaintiff, who had gained partial control of his frightened horse, and upon hearing its approach, stopped his car a short distance ahead of the horse, thus adding to its fright, the court was justified in calling the attention of the jury to this evidence and directing them to determine whether defendant was negligent in thus stopping the car, without specially defining in that connection the care required of defendant, the court having in other instructions correctly defined negligence.

**Same.** Ordinarily, the operator of an automobile may stop his machine at any point in a street where he chooses, provided he does not unduly obstruct the street; but where the safety of property or person is involved in doing so, that course is exacted of him which an ordinarily prudent person would exercise for their protection.

**Same.** An instruction exacting of defendant, knowledge that a horse of ordinary disposition would become frightened from a passing automobile, under the circumstances disclosed by the evidence, was more favorable than required.

**Submission of issues:** CONFLICTING EVIDENCE. The testimony of witnesses, though not in harmony with either plaintiff or defendant, may present an issue for determination.

**Use of streets:** NEGLIGENCE. The driver of a well broken horse may occupy any portion of a street he chooses, and he may rely on the exercise of ordinary care by those approaching him from the rear; and in using a street frequented by automobiles, he only assumes the risk incident to their operation in a reasonably careful manner.

Appeal from Cedar Rapids Superior Court.—HON. J. H.
ROTHROCK, Judge.

FRIDAY, JULY 2, 1909.

ACTION for damages resulted in a judgment against
the defendant, and from it he appeals.—Affirmed.

Jamison & Smyth, for appellant.

S. K. Tracy, W. E. Steele and Jno. A. Reed, for
appellee.

LADD, J.—One Nelson was driving plaintiff's horse,
hitched to a Frazer cart, in an easterly direction on the
south side of First Avenue. The inside wheel was one or
two feet from the curbing, and the horse was moving at
the speed of about seven miles an hour. When halfway
between Eleventh and Twelfth Streets, the defendant's
automobile, operated by himself and moving in the same di-
rection at the speed of from ten to fourteen miles an hour,
came opposite Nelson without warning of its approach. The
estimated distance of its inside wheel from the outside
wheel of the cart varied from two to ten feet, and, when
some little distance past the horse, some of the witnesses
testified that the automobile turned south in front of the
horse, while one says it moved straight forward. Neither
the horse nor its driver was aware of the approach of the
automobile until it was opposite the latter, when the horse
became frightened and turned to the south, drawing the
cart wheel on the curbing. This threw the driver out of
balance and he lost partial control of the horse. It ran
forward until seeing the automobile, which had been stop-
ped ahead of him, when it swerved to the north side of the
avenue, running against a telephone pole, and his shoulder
was broken. According to the driver, the automobile
turned to the south in front of the horse when about ten

feet ahead, and stopped when thirty feet from it; while defendant testified that the automobile moved straight on and was two hundred and fifty feet from the horse when it stopped. There was also a conflict in the testimony as to whether the driver had regained control of the horse when the automobile stopped, and whether it again took fright at the machine, and because of this ran into the telephone pole. Appellant relies on thirty-nine points only for reversal, but these are condensed in argument into twenty divisions. It would have been helpful had the process of elimination been so far continued as to leave none other than the propositions in dispute. These only need be considered.

I. Several questions were propounded to Nelson concerning the characteristics and habits of a horse to which objections were interposed and overruled. As he had been handling horses for twenty years and had observed their habits and conduct, especially when frightened, he was rightly held competent to testify as an expert. Such evidence was admissible. *Heinmiller v. Winston Bros.*, 131 Iowa, 32; *Moreland v. Mitchell Co.*, 40 Iowa, 394. But see *Kraus v. Ry.*, 55 Iowa, 338.

1. EVIDENCE: expert testimony: admissibility.

The defendant, after testifying to what occurred, was asked whether there was anything in the appearance of the horse or the position of the driver to indicate that the latter might lose control or that there was danger of trouble. This clearly called for the conclusion of the witness, and the objection on this ground was rightly sustained, as was also a like objection to the inquiry as to whether he could have gotten farther from the cart in passing without getting on the street car track. The street was sixty feet wide between curbings and paved with a double street car track, the inside rail being twenty-three feet from the curbing. As the width of the automobile was shown, the inquiry merely called for

2. EVIDENCE: conclusion.

computation. Besides, as the trolley posts were in the center of the street, there was no apparent reason for avoiding the track.

II. Much of appellant's argument is on the theory that no duty is owing the driver of a team by the operator of an automobile about to pass him, save as prescribed by

3. AUTOMOBILES: operation: reasonable care: statutes.

sections eight and nine of chapter 53, of the Acts of the 30th General Assembly (sections 1571i, 1571h, Code Supp. 1907). The first of these prohibits a speed in a closely built portion of a city of more than a mile in six minutes, and the last provides that "any person operating a motor vehicle shall at request, or on signal by putting up the hand, from a person driving a restive horse, or other draft or domestic animal, bring such motor car immediately to a stop, and, if traveling in the opposite direction, remain stationary so long as may be reasonable to allow such horse or animals to pass, and if traveling in the same direction, use reasonable caution in passing such horse or animal." This does no more than define the duty of the operator of an automobile upon request or signal. It in no way relieves him from the obligation resting upon all travelers on the highway to exercise ordinary care for the safety of others. It in no way relieves him from the duty of exercising reasonable caution in passing a horse or other animal, in the absence of any request or signal. One may travel in a motor vehicle on the streets, but, in doing so, the care exacted necessarily depends somewhat on the rate of speed, size and appearance, manner of movement, noise, and the like of such vehicle, as well as the means of locomotion of others on the highway. *House v. Cramer*, 134 Iowa, 374. As the part of the city in question was closely built, defendant was negligent in moving the automobile at a higher speed than ten miles an hour, as this was in violation of the statute quoted.

The evidence tended to show that a horse though well

broken is likely to become frightened by an automobile or other vehicle coming from the rear in close proximity

4. SAME: reasonable care.

to it in passing, unless some warning is given. For this reason, these machines are supplied with a signal horn with which to sound a warning of their approach. Whether such signal is essential in the exercise of ordinary care must be determined from the circumstances of each case. Possibly had the motor vehicle passed on the other side of the street, there might have been no occasion for giving warning of its approach, for it would have been more likely to have been noticed and the horse less likely to have been frightened. But there was evidence tending to show that it was approaching from directly behind the cart, that it turned out barely enough to avoid colliding with it, and was within a few feet from the horse when passing, and turned in when no more than ten feet beyond. No argument is required to demonstrate that an automobile, making little noise in moving as in this instance, and passing as the evidence tended to show this did, would be likely to frighten an ordinarily well-broken horse; and whether the defendant, in operating it as he did in passing, exercised the caution an ordinarily prudent man would in like circumstances, was for the jury to determine.

III. Several instructions are criticised for submitting to the jury whether the defendant was negligent in passing the horse at an excessive rate of speed. This was coupled

5. SAME: negligence: instructions.

with the condition that the automobile was moved so close to the horse as to frighten and cause it to shy onto the curbstone and run away. Enough has been said to indicate that, in our opinion, to come up behind a team with an automobile moving at excessive speed, and pass within a few feet of it without any warning, may be negligent, and the exceptions are not well taken.

In other instructions, the court added the circumstance

of turning in front of the horse so close as to cause him to become frightened. The evidence was such that the jury might have found that the automobile turned in front of the horse within a few feet after it had been passed, and that this might have increased the fright of the animal, already turned toward or on the curbing. The driver had testified that had he been warned of the approach of the car he might have controlled the animal, and the circumstances of the omission to sound the signal horn or give other warning, together with the nearness of the automobile in passing, were properly to be considered, in connection with the speed at which the automobile was moving, in determining whether defendant was negligent in its operation.

IV. The evidence was such that the jury might have found that after the automobile had passed the driver regained his balance and such partial control of the horse as to direct its course in the street, when the defendant, hearing its approach, stopped his machine some thirty feet ahead and thereby added to the fright of the horse, causing it to turn to the left and run against the telegraph pole. The attention of the jury was directed to this evidence in connection with the circumstances shown, with the statement that it was for the jury to say "whether the defendant in thus stopping his car was guilty of negligence." In another instruction, the court had correctly defined negligence, so that no exception can well be taken to this in not indicating the care defendant was bound to exercise. In undertaking to stop, he was aware that the horse had become frightened by the automobile, and had not recovered therefrom, and it was for the jury to say whether, as an ordinarily prudent man, he ought not to have known that in bringing the vehicle, which had scared the horse, to a stop but a short distance in front of the frenzied animal approaching directly from behind, he would increase its fright and render it more difficult of control; if so, in what he did the jury might have found

6. SAME.

him to have been negligent. Had the horse been given the street, it would seem that the driver might have regained control, at least the jury might so have found. The natural effect of stopping the thing which had frightened it but a short distance away was to furnish an obstacle to his progress which it naturally would attempt to avoid, and this might have been found to have turned the horse from its course, and therefore to have contributed to its injury.

Ordinarily a person may stop at any point on the street where he chooses, provided he does not unduly obstruct the way; but in an emergency like this the safety of property and person is involved, and that course is exacted which an ordinarily prudent man would exercise for their protection. Having passed the horse immediately before, and being aware of the fright caused thereby, and that the horse was then running toward the receding automobile with the driver still in the cart, it was incumbent on him to exercise care commensurate with the situation in which he found himself, to the end that no act of his should interfere with the efforts to regain control and save the horse and driver from injury. Whether he so did was fairly an issue for the jury to decide.

7. Same.

V. Complaint is made of instruction No. 10 in that it exacted knowledge of the defendant that a horse of ordinary disposition would become frightened at an automobile passing under the circumstances disclosed in the evidence. It was more favorable than required, as all that was necessary was that defendant, as an ordinarily prudent man, should have known if such were the fact.

8. Same.

Instruction No. 9 is based on the testimony of two witnesses, and, though what they testified to was not in harmony with that of the driver or defendant, it was in the case, and the issue raised thereby properly submitted to the jury. Other

9. Submission of issues: conflicting evidence.

exceptions to instructions are disposed of by what has been said.

VI. Appellant insists that driving the cart so close to the curbing was in itself negligent. We do not think so. The horse was well broken, and the driver had the right to drive it anywhere in the street he might choose. Nor was he bound to keep a lookout backwards. He had the right to rely upon those approaching from the rear to do so in the exercise of ordinary care. It also appears that First Avenue was frequented by automobiles, and it is urged that the driver assumed all the risk of having his horse frightened when driving on that street. He did so assume the risk incident to their operation in a reasonably careful manner, but no more. Otherwise those manipulating these machines might appropriate any street to their own use, for, if other travelers must assume the risk, they could only go thereon at their peril.

10. USE OF
STREETS:
negligence.

The fourteenth instruction is purely negative, and, even though not comprehensive, it was correct as far as it went.

Instruction No. 16 is not inconsistent with previous instructions, but rather in explanation that the unlawful speed of the car alone did not warrant a verdict for the plaintiff. Instructions requesting this were included in those given, insofar as containing correct statements of the law. The ruling on the motion to strike portions of the petition was without prejudice. The evidence was sufficient to carry the case to the jury.—The judgment is *affirmed*.