THEODORE JOHN YOUNGMAN, Appellant, v. SAMUEL SLOAN, Appellee.

No. 44164.

AUGUST 5, 1938.

H. R. Elwell and R. B. Hawkins, for appellant.

G. F. Hoffman and Putnam, Putnam, Fillmore & Putnam, for appellee.

MILLER, J.—On February 8, 1936, at about 10:30 o'clock a. m., appellant Theodore John Youngman, drove a Chevrolet sedan west from Grinnell on paved highway No. 6, attached to which automobile was a two-wheel trailer containing a quantity of coal; appellant being accompanied by his father-in-law, David F. Haines. At that time there was considerable snow on the ground, the temperature was approximately 14 degrees below zero, and there was a wind of high velocity blowing snow across the pavement at different points. On account of the snow being thus blown across the pavement visibility was considerably reduced, at times being as much as forty rods, and at other times not more than thirty feet. At a point on said highway about a mile west of Grinnell a hedge ran back some distance north from the north side of the same, at which point the snow had drifted across the north half of the pavement, and at which point visibility did not exceed 40 to 50 feet. The south half of the pavement at this point was free from snow and was unobstructed, as was the shoulder on the south side of the highway. When the automobile being operated by appellant reached this point the right wheel thereof struck the snow upon the north half of the pavement, causing the automobile to turn to the right on to the north shoulder, where it became stalled in a snowdrift. When the automobile stopped it faced northwest, and according to the testimony of appellant, the rear end thereof was from six to eight inches north of the two black lines in the center of the pavement. Appellant and Haines thereupon got out of the car, unhooked the trailer and moved it west of the automobile and to the north edge of the pavement. Appellant and Haines then endeavored to extricate the automobile, and while so engaged an automobile operated by appellee approached from the east on the north side of the pavement, and struck appellant and the Chevrolet automobile, thereby throwing appellant a distance of approximately 25 feet up the pavement. As a result thereof appellant suffered injuries, resulting in the institution of this action. This collision caused the

**560**

Chevrolet to pivot around and the front thereof struck the right rear fender of appellee's car.

The motion of appellee asking for a directed verdict in his favor was based upon claimed contributory negligence as a matter of law on the part of appellant, and a claimed failure of any showing of negligence on the part of appellee constituting the proximate cause of the injuries suffered by appellant.

The trial court in his ruling upon this motion sustained the same solely upon the proposition that appellant was guilty of contributory negligence as a matter of law, and gave no consideration to the claim that the evidence failed to show any negligenge upon the part of appellee. In this court appellee, in addition to his contention that appellant was guilty of contributory negligence as a matter of law, likewise contends that the evidence fails to show any negligence upon his part that was the proximate cause of the collision and injuries in question. We are, however, satisfied that the testimony of appellant, as hereinafter set out, furnished ample basis to warrant the submission of the question of negligence upon the part of appellee to the jury, and therefore we are only concerned with the question of whether or not the trial court erred in sustaining said motion upon the ground that appellant was guilty of contributory negligence as a matter of law.

Appellee contends in support of the trial court's ruling, that the record established affirmatively without dispute and as a matter of law that appellant took a position of obvious danger alongside the stalled automobile in the path of and next to the approaching traffic without keeping a lookout or exercising any care for his own safety, and that as result thereof he was guilty of contributory negligence as a matter of law.

Citation of authority is not required to the effect that contributory negligence is ordinarily a question for the jury, and except in cases where the facts are so clear and undisputed that fair-minded men could draw but one conclusion, that the same must be submitted to the jury for determination; and also, to the effect that in the consideration of a motion for directed verdict that the evidence must be considered in the light most favorable to plaintiff. With these preliminary propositions in mind we proceed to determine whether or not the testimony introduced by appellant does establish, conclusively as a matter of law, contributory negligence on his part.

■ It is not contended that the act of appellant in striking the snowdrift, thereby causing the automobile to stall upon the north side of the pavement or the removal of the trailer from the automobile, or the endeavor to start the automobile or move it, constituted such contributory negligence, but it is contended that appellant, realizing the reduced visibility at the place in question, took a position of obvious danger in the path of all approaching traffic without keeping a lookout or exercising any care for his own safety; it being the contention of appellee that appellant turned his back to the approaching traffic and did not look to the east until immediately preceding the collision.

Appellant on direct examination, in substance testified, that after the car became stuck in the snowdrift, that they moved the trailer; that he then endeavored to start the car without success; that he then went around to the other side of the car and got the shovel out of the back and tried to shovel some snow, but made no headway on account of the strong wind; that he then put the shovel back in the car, being then on its right-hand side, and looked around and saw the automobile of appellee about 45 or 50 feet to the east, which was then coming west on the north side of the highway at a speed of from 35 to 40 miles an hour; that he then yelled, "Look out, Dave. There's a car," and jumped to the north; following which he was struck by appellee's car, and that his next reaction was finding himself lying on the pavement about 25 feet up the road. He also testified that his hearing was good and that he did not hear any warning signal from appellee's car prior to the impact; and that just prior to the impact he was located in front of the back door of the Chevrolet sedan.

David F. Haines testified that following appellant's attempt to shovel snow, appellant took a position on the right-hand or east side of the car, taking hold of the right rear fender with his left hand and the door handle with his right hand; that he (Haines) took a similar position on the left-hand or west side of the automobile and that he and appellant then endeavored to rock the same; that while so endeavoring to rock the car appellant watched to the east and Haines watched to the west, and that while so endeavoring to rock the car appellant yelled, "Dave, here's a car," and jumped to the north.

Upon cross-examination appellant testified that when he quit shoveling snow he walked to the rear and took hold of the

fender with his left hand, and with his right hand took hold of the handle of the door, so that he stood facing the car.

"Q. In other words, you were in some such position as this, (indicating) and you were rocking the car, and you were rocking it then in that way, and you just happened to glance up when you saw this Sloan car coming. A. I turned around and seen them a-coming. We just tried to rock it—it was eighteen below zero—we didn't try to stand there an hour and rock it.

"Q. You first tried to shovel there, and then you ran back and tried to rock it, and while you were facing the car in that position you looked back over your shoulder— A. And I hollered, 'Dave, here's a car.' I knew he was going to hit us.

"Q. But you looked back over your shoulder? A. I did.

"Q. And while you were in that position facing that car you looked back over your shoulder and saw the car? A. No, after we got through shaking the car.

"Q. After you got through shaking the car? Then you were all through shaking at the time you saw this Sloan car? A. We was.

"Q. Well, now, you were there at the rear fender and you just quit rocking it, and you turned around, is that it? A. Turned around.

"Q. And saw the car, and it was about 45 or 50 feet from you then, and you jumped how far— A. I wouldn't recollect how far I jumped.

"Q. And the first time you looked over your shoulder and you saw that Sloan car about 45 or 50 feet to the east? A. I did."

Appellee in argument stresses the fact as established by the testimony of practically all the witnesses, that the visibility at the point of the accident was not to exceed 40 to 50 feet, and construes the testimony of appellant relative to his conduct just preceding the collision to result in the conclusion that during the entire five or six minutes between running into the snowbank and the collision that appellant never looked to the east for approaching traffic except a glance over his shoulder a split second prior to the collision, and contends that the same shows affirmatively the failure of appellant to maintain any lookout whatever for traffic coming from the east, and a failure to exercise any care of his own safety.

An analysis of this testimony, construing same as we must in the light most favorable to appellant, does not warrant the conclusion that the only time appellant looked to the east was a glance backward over his shoulder just a split second before the collision. While it is true that one of his answers on cross-examination might lead to that inference, yet an examination of his testimony in its entirety reveals that he likewise testified that he had desisted from the attempt to rock the stalled automobile and turned around facing the east, at which time he then observed the car being operated by appellee about 45 to 50 feet away, and at which time he jumped to the north.

Conceding to the testimony of appellant the favorable light it is entitled to in the consideration of a motion to direct verdict, it seems to us that even if appellant had made no attempt or endeavor to rock the automobile, but had devoted the entire period following its stalling in the snowdrift, in looking toward the east, that he would not have observed the approach of appellee's car any sooner than he did in fact observe its approach as revealed by his testimony. Not only appellant, but also his father-in-law, and likewise witnesses in behalf of appellee, testified that at this particular point the visibility did not exceed 40 to 50 feet, and, as will be recalled, appellant testified that he first observed appellee's car 45 to 50 feet east of him, which, under the uncontradicted testimony of all the witnesses, was the extreme visibility possible at the scene of the accident.

In view of the fact that the automobile being driven by appellant had become stalled in the snowdrift, and was obstructing practically the entire north half of the highway, it was his duty to attempt to remove the same with all reasonable expediency. Naturally, in the exercise of that duty, it was also his duty to exercise the ordinary care of a reasonably prudent person for his own safety; that is, it was his duty to exercise the degree of care for his own safety that would be exercised by a reasonably prudent person commensurate with the dangers inherent in the surroundings.

In our opinion, this testimony of appellant tends to establish that he endeavored to perform a duty owing by him, and in the performance of that duty, while not continuously looking toward the east for approaching traffic, he did in fact look to the east and observed the approach of appellee's automobile as soon as the same became visible. We are satisfied that

the testimony of appellant, in its entirety, does not reveal a state of facts from which can only be drawn the one conclusion, that he did not maintain a lookout or exercise any care for his own safety; and that therefore said question should have been submitted to the jury for determination.

Appellee places reliance upon our two former cases of Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345, and Denny v. Augustine, 223 Iowa 1202, 275 N. W. 117, and likewise the trial court in his ruling upon the motion to direct verdict reached the conclusion that the Fortman case was controlling herein. However, an analysis of the Fortman case reveals that the fact situation therein was entirely different from the instant case, and is not, in our opinion, controlling. Therein, following sunset and between dusk and dark, the decedent was driving south on a north and south highway, and as he approached the top of a hill he ran out of gas, and his car stopped. He then endeavored to push the car back into a private drive to the west for the purpose of cramping the wheels to the north to permit the car to coast downhill to a service station to the north. In so endeavoring to turn the car around he got it almost crosswise of the west half of the pavement. One Dusenberg approached in an automobile from the south while decedent's car was in that position. Dusenberg stopped his automobile and talked to decedent, at which time decedent was at the front of his car. Decedent then went to the left or north side of his car and took hold of the body thereof in an effort to push it backwards, which position he maintained until struck by the automobile driven by the defendant McBride. The lights were burning on the Dusenberg car, which then proceeded north on the east side of the pavement and met the car of defendant about 75 feet north of decedent's car. Defendant's car was then proceeding south up the hill at a speed of approximately 35 miles per hour with its lights burning. Upon discovering the presence of decedent's car defendant applied his brakes, attempted to stop and attempted to turn to the left, but was unable to do so on account of ice on the pavement, and collided with decedent and his car. In commenting upon these facts the following language is used in the opinion (page 1007 of 220 Iowa, page 347 of 263 N. W.) :

"What were some of the important circumstances here which were known by plaintiff's decedent and what precaution

did he take for his own safety? He traveled this street regularly. He knew that it was a heavy traffic street. He knew about the hill and the contour of the ground. He knew that the paving was covered with ice, for he was out on it and pushing his car on it. He knew that the sun had long since set and that it was between dusk and dark. He had his car crosswise on the paving so that it entirely blocked the west half of the paving and would be directly in the path of a car approaching from the north. He knew his car was without lights. He was standing at the front end of his car only a few seconds before the injury was received. He walked along the north side of the car where cars approaching from the north with their lights on were visible. He did that at a time when the east half of the paving was occupied by the Dusenberg car going north with its lights shining. Under these circumstances, he deliberately turned his back upon on-coming traffic and with his arms spread out gave his attention exclusively to pushing or maneuvering his car, and remained in that position in the face of the on-coming car with its headlights shining and without making any effort to protect himself.

"It thus appears that in a situation which was obviously dangerous, particularly in view of the ice on the pavement and the presence of the Dusenberg car, plaintiff's decedent took no precautions whatever for his own safety. It does not appear that he exercised any care for his own safety, much less ordinary care. He appears to have been utterly oblivious of the obvious possibility (which almost amounted to a certainty on this heavy traffic thoroughfare) that a car would approach from the north, and that, in view of the condition of the paving, it would have difficulty in avoiding him."

The facts in the instant case reveal that the two cases are not analogous, as in the Fortman case the decedent must have been cognizant of the obvious danger confronting him, and exercised no care whatever for his own safety; whereas, in the instant case the testimony of appellant reveals that he did observe the approach of appellee's car at the earliest possible moment that its approach could have been visible to him, and endeavored to escape therefrom. Likewise, in the case of Denny v. Augustine, supra, relied upon by appellee, the facts reveal that the plaintiff was in a position upon the pavement where at any time, for a considerable period prior to the collision, he could have ascer-

tained the approach of the Lynn automobile by looking or glancing to the south. Therein the plaintiff, a witness in his own behalf, offered no information as to whether he saw the approaching car nor any explanation for not seeking a place of safety if he did see it; and there was no evidence from which a jury could have found that he was keeping any lookout whatever for his own safety or paying any heed to traffic upon the highway. The opinions in both the Fortman and Augustine cases reveal that no effort was made on the part of the decedent in either of said cases to take any steps whatever for their own self-preservation.

Being satisfied that the testimony of appellant, construed in its most favorable light, does not establish conclusively as a matter of law that appellant was guilty of contributory negligence, it follows that the action of the trial court in sustaining the motion to direct verdict was erroneous and must be reversed.—Reversed.

SAGER, C. J., and ANDERSON, DONEGAN, RICHARDS, STIGER, and KINTZINGER, JJ., concur.