A. B. McINTYRE, Appellant, v. O. B. WEST COMPANY, Appellee.

No. 44345.

September 27, 1938.

Rehearing Dismissed January 7, 1939.

Reed & Elick, for appellant.

Carr, Cox, Evans & Riley, for appellee.

Sager, C. J.—On January 7, 1937, appellant, while proceeding toward Des Moines, reached the east limits of Prairie City, where the accident herein dealt with occurred. It was about

8 o'clock in the morning; the day was clear; and the pavement covered with ice, which appellant described as not slippery like that caused by melting snow, but was formed by sleet which fell the night before. It was rough and the traction fairly good. As appellant approached the city he was traveling from 30 to 35 miles per hour, which speed was reduced to about 25 or 30 miles per hour on entering the city. This speed was maintained by him until very shortly before the accident when, after the application of brakes, and sliding, his speed was between 10 and 15 miles per hour. As nearly as may be determined from the record, the accident happened two blocks west of the east city limits.

As appellant passed into the first block he went into a slight dip or sag—about 5 feet deep, he put it—and then up a slight incline. This was at a distance of about 300 feet from the Main street intersection where the two vehicles came together. At that time he saw the truck about 200 feet west of Main street. Appellant was driving west on the north side of the pavement, and the truck was coming from the west. When appellant first saw the truck it was on its own or right-hand side of the road, traveling perhaps 20 to 25 miles per hour. Shortly after he first saw the truck it seemed to head toward the wrong side of the road, and it did, in fact, continue that movement until the front of the truck was over the black line on appellant's side. The truck was about 100 feet from the intersection when first seen, and appellant about 150 feet therefrom. When the truck turned to his side, appellant applied his brakes; and the car slid forward about 50 feet. The brakes were then released because the driver of the truck had apparently headed back to the right. When the truck returned to the right side of the road it was about 75 to 100 feet from the point of the accident. It continued its easterly course south of the black line for about 25 feet, and then came back to the left on appellant's side. The truck was then about 50 to 75 feet from the intersection. Meanwhile appellant's car had approached within 100 feet. Appellant tried to stop when the truck came toward him, and put on his brakes, but kept sliding in a straight line. The vehicles came together west of the center of the intersection. When they stopped the car was two feet, or perhaps a little more, from the north line of the pavement. Appellant says that the truck came all the way over to where he was proceeding, and head-on into his car. Appellant tried to

turn his car after it began to slide, but not to go around or miss the truck on the wrong, or left-hand, side of it.

Appellant sustained grievous injuries, which need not be described.

Appellant was familiar with the fact that he was approaching a city, as he had passed through it before. He had seen the "SLOW" sign at or near the edge of the city, but did not recall seeing any "RESIDENCE DISTRICT" sign.

A Mr. Reed, coming from the south toward the intersection where these vehicles met, had stopped, and saw both coming, the car from the east and the truck from the west. When first seen by him the truck was about a block to the west. He watched its movement from that time on until the collision occurred. It was moving hardly 20 miles per hour, and a short way from the intersection "his wheels locked and started to slide, possibly 60 feet or so." The truck had started to move to the left before that, and when the wheels locked it kept going over toward the left, or north, side of the pavement. "Then they came together." After seeing the truck start to turn, Reed turned to the appellant's car and saw that its wheels were sliding. It was then a distance from the intersection of perhaps 100 feet. The car, according to this witness, was on the north, or right-hand, side of the road when the two vehicles came together. The front wheels of the truck were over the black line, and one hind wheel was over the line. The collision took place a little west of the center of the intersection. According to Reed, the Chevrolet was traveling 10 or 15 miles per hour at the moment of collision. He heard the driver of the truck say that he did not apply his brakes, that his front wheels were locked. That the car and truck were moving very slowly is indicated by the statement of this witness that they came to rest where they came together. He said it was not very long from the time the wheels of the truck cramped to the right before the vehicles collided. He saw that the wheels were cramped, but not when they started across the line. "It all happened pretty quick."

Appellant testified that no signal of intention to turn was given by the driver of appellee's truck.

Appellant offered in evidence plats or charts showing the distance on the two blocks east of the intersection over which he came, and the one block to the west over which the truck was seen to travel before the collision. Measurements and distances

showed that the frontage of dwellings and business houses was more than 40 per cent of the distance covered by the plats. From these measurements and appellant's own testimony the court was justified in finding that appellant was guilty of negligence as a matter of law. See Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, and cases following. Appellant seeks to avoid the apparent effect of the statute by arguing that the distance of "three hundred feet or more" used in Code section 5030 could be computed in various ways so as to escape the conclusion that he was negligent. It is argued, for instance, that the distance of 300 feet should be measured backward and forward from the location of the car. This view cannot be accepted because it would give the term "residence district" an ambulatory meaning. Another view which appellant presents is that the frontage should be measured on one side or the other of the street. Whether we correctly apprehend the contentions of appellant, we are satisfied that on this record there is no escape from the conclusion that there was more than 40 per cent frontage of residence and business houses along the highway covered by the vehicles involved in this accident.

Assuming then, for the purpose of further discussion of the matter before us that appellant was negligent, we are confronted with the inquiry whether such negligence contributed to the injuries he sustained.

As we said in Carlson v. Meusberger, 200 Iowa 65, 71, 204 N. W. 432, 435:

"Appellee [plaintiff] may have been guilty of negligence; but if that negligence did not contribute to cause the collision, it would not defeat his right to recover. It is not negligence merely, but contributory negligence on the part of the plaintiff, that defeats his recovery. The burden was upon appellee to establish that he was guilty of no negligence that contributed to the collision. His admitted failure to give the warning signal required by the statute constituted negligence, and had at least an apparent causal connection with the collision. But if there is in the record evidence from which the jury might have found that no such causal relation in fact existed, that the failure to give such signal did not in fact contribute to cause the collision, and that it would have occurred even though the signal required by the statute had been given, then it cannot be said, as a matter of

law, that the failure to give the signal constituted contributory negligence.'' (Citing cases.)

■ As appears from the narration that has gone before, the jury could not have found other than that appellant was on his own side of the highway all the time, and when the truck ran into him he was still on that side. Moreover, the collision occurred west of the center of the intersection on the side where the truck had no right to be. Appellant's claim that the truck ran into him must be taken as true for the purposes of this appeal; and if it had not been for the action of the driver of the truck in this regard appellant would not have been hurt. The fact that he was hurt does not of itself establish the negligence of the driver of the truck, but when it is remembered that this verdict was directed at the conclusion of the appellant's case, and that we must take the best view possible of the evidence in his favor, it is apparent that the driver of the truck was negligent and that the jury could have found that such negligence was the proximate cause of appellant's damages. The jury could have found that appellee's truck was across the line and in a place where it had no business to be. Appellee seeks to escape the effect of this by assuming as established certain legal excuses for its apparent violation of the statutes. But whether the truck's brakes were defective, or the truck slid because of such defective brakes; whether the driver intended to make the turn that he did before he reached the center of the intersection, believing that he had time to make the turn safely, does not appear; neither may it be assumed that the icy condition of the road and the defective brakes caused him to slide into the car of appellant. These are all matters that appellant was not called on to explain.

■ Appellee argues on appellant's negligence that violation of a statute is of itself negligence, and it is right in making that claim. But this rule likewise applies to appellee, and, sensing this, appellee says that there is an exception to the rule just stated, and that is that violation of a statute is not negligence *per se* if properly explained. This overlooks the fact that the situation called for explaining by appellee as regards the facts from which the jury might have found that the violation of the statutes of which it was guilty was the proximate cause of the collision. Why it was that the truck was on the wrong side of the road is for the appellee to explain, and explanation is not suf-

ficient if found only in argument. The jury could have found that the truck changed its course without sufficient space to safely make the turn; that it turned without giving a signal; and that it failed to go around to the right and beyond the center of the intersection. If the brakes were defective, it was negligence on the part of appellee to be driving the truck on the highway unless there was some excuse for it. All these things were for the appellee to excuse. As the record stands, without explanation or excuse on the part of the appellee, appellant, notwithstanding his negligence—if he was negligent—would not have been hurt but for the wrongful presence of the truck on his side of the road.

We think it was a question for the jury whether appellant's negligence contributed to his damages, whether appellee was negligent, and whether or not appellee's negligence, if any, was the proximate cause of appellant's injuries.

Appellee cites numerous cases to sustain its various contentions. Some are unnecessary to consider because of what has been said herein. Others announce rules of law which need no citation in their support. All of the appellee's propositions have been examined and none seems to us to require a result different from that announced. Both parties appeal to the laws of the road as laid down by the statutes, and to the same principles announced by the decisions. The difference between them lies in their proper application to facts disclosed by the record. They differ, too, on the question whether the negligence of appellant contributed to his damages, and what was the proximate cause of the collision which caused them. The facts disclosed by the record are such that reasonable minds might differ. The decision of the question which conclusion should be drawn lies with the jury.

It follows that the trial court was in error in directing a verdict, and the case is reversed and remanded for further proceedings herein.

The motion to dismiss or affirm, submitted with the case, is overruled.—Reversed and remanded.

ANDERSON, KINTZINGER, RICHARDS, and DONEGAN, JJ., concur.