E. R. LAWSON, Appellant, v. LEW FORDYCE, Appellee.

No. 46375.

December 14, 1943.

Rehearing Denied March 10, 1944.

· Ralph H. Munro, of Fairfield, for appellant.

McNett, Kuhns & McNett, of Ottumwa, for appellee.

Bliss, J.— Defendant's motion to direct a verdict for him alleged as grounds therefor the insufficiency of the evidence to establish any negligence on his part which was the proximate cause of the injury and the failure of the plaintiff to establish his freedom from contributory negligence. The only allegation of negligence to which we need give attention is the admitted failure of the defendant to sound the horn of his automobile as it approached the plaintiff and the cow. There

is no dispute as to the material facts. The plaintiff, a retired farmer fifty-seven years old, lives in the west part of the town of Libertyville, on the north side of County Road K, which extends east and west through the town. The traveled part of the road is 26 feet wide and it is graveled. Plaintiff's home is approximately 480 feet west of the west side of Cowan Street. The road for about a half mile west of Cowan Street is almost level. About 10 o'clock in the forenoon of January 9, 1940, the plaintiff entered the road from the driveway out of his yard, leading a gentle seven-year-old milk cow which he was taking into Libertyville to sell. The snow had been removed from the surface of the road with a plow or grader, leaving the roadway somewhat icy. It was a rather clear, cold, frosty morning. Along the north edge of the gravel the snow had blown or been piled into a drift a foot or two high. For a little distance the plaintiff led the cow along the north side of the road. Plaintiff then crossed the center line and walked with the cow on the left side of the south or right track for a short time. Then he moved over onto the right side of the right track and walked within four or five feet of the south edge of the gravel. The cow walked just behind him and perhaps a little to his left. She had a halter on and the lead rope was about four feet long. He held it about a foot from the outer end. Another car passed him shortly after he left his home. He glanced back over his shoulder two, three, or four times, as nearly as he could recollect, but saw no automobile approaching him from the rear. The cow walked along quietly. When they were between 50 and 100 feet west of the west side of Cowan Street the cow gave a sudden lunge forward, knocking him down and breaking his hip, causing a very serious permanent injury. He looked up from the ground and saw the defendant and Mrs. Fordyce going past him to the east, in their automobile, on the north side of the road.

The defendant, seventy-four years old, is a retired farmer who lived on his farm a few miles west of Libertyville. In January 1940 he owned a 1935 Chevrolet coach in good mechanical and running condition. It ran smoothly and quietly, and "didn't make a noise like these Model T's." It had a horn in working order. Defendant was driving and his wife

sat by his side. They left home about 10 o'clock a. m. to go east on County Road K through Libertyville to Fairfield. They saw plaintiff leading the cow out of the driveway onto the road when they were about 2,000 feet west of him. There was nothing to interfere with anyone's vision from Cowan Street for almost a half mile west, looking either east or west, at any point in that distance. The speed of the automobile did not exceed twenty miles an hour very much. It traveled along the south side of the road at that speed until about 200 feet past the Lawson driveway, when defendant gradually angled the car over to the north side of the road as he passed the plaintiff at a speed which he estimated at about five miles an hour. He never sounded the horn at any time. Both he and his wife saw plaintiff and the cow at all times. They observed the cow walking quietly along. The south side of the automobile·was about 11 feet from the cow and about due north of it when Mrs. Fordyce saw the cow shy and jump against plaintiff and knock him down. Plaintiff testified that he neither saw nor heard the automobile at any time until he saw it from where he lay on the ground.

It appears from the record that the first trial before Judge Daugherty resulted in a verdict for plaintiff for $2,500, which was set aside and a new trial granted because the court had submitted to the jury an allegation that "the defendant was guilty of negligence in approaching him too near to the· cow," which allegation the court had previously stricken.

I. In passing upon the contested issues all believable evidence and justifiable inferences favorable to the plaintiff must be accepted at their face value in determining whether he made a case submissible to the jury. The evidence is to be read and construed in the aspect most favorable to the plaintiff. Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 93, 277 N. W. 580, 281 N. W. 504; Holderman v. Witmer, 166 Iowa 406, 409, 147 N. W. 926; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 390, 249 N. W. 220; Robertson v. Calgren, 211 Iowa 963, 972, 234 N. W. 824; Rhinehart v. Shambaugh, 230 Iowa 788, 790, 298 N. W. 876.

" 'Every inference reasonably permissible in support of the issue should be carried to the aid of the evidence.' Bauer v.

Reavell, 219 Iowa 1212, 1219, 260 N. W. 39, 43." McWilliams v. Beck, 220 Iowa 906, 909, 262 N. W. 781, 782.

See, also, Huffman v. King, 222 Iowa 150, 157, 268 N. W. 144. The rule has been stated and repeated until it has become axiomatic that where reasonable minds may reach different conclusions from the facts presented the case is one for the jury. Short v. Powell, 228 Iowa 333, 335, 291 N. W. 406; Lathrop v. Knight, 230 Iowa 272, 276, 297 N. W. 291; Wilkinson v. Queal Lumber Co., 203 Iowa 476, 480, 212 N. W. 682; Hanson v. Manning, 213 Iowa 625, 630, 239 N. W. 793; Roberts v. Hennessey, 191 Iowa 86, 103, 181 N. W. 798, 805, where we said:

"It was for the jury to determine whether the appellant was guilty of negligence in failing to give the signal as he approached the appellee."

We have repeatedly held that where there is any evidence tending to establish the negligence alleged it should be submitted to the jury. Lorimer v. Hutchinson Ice Cream Co., supra, 216 Iowa 384, 389, 249 N. W. 220; Huffman v. King, supra, 222 Iowa 150, 152, 268 N. W. 144. Not only is it a question for the jury when the facts are in dispute, so that a court cannot substitute its judgment for that of the jury (Glover v. Vernon, 226 Iowa 1089, 1098, 285 N. W. 652), but it may also be true where the facts are not in dispute. Balcom v. City of Independence, 178 Iowa 685, 688, 160 N. W. 305, L. R. A. 1917C, 120. As said in Murphy v. Iowa Electric Co., 206 Iowa 567, 572, 220 N. W. 360, 362:

"Likewise, even though it is known what was done by that individual in this regard, yet if his conduct is such that there may fairly be different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question."

■ Appellant contends that the appellee's admitted failure to give any warning of his approach by sounding the horn of the automobile was the proximate cause of his injury. Appellee argues that there is no statutory provision which required him to sound the horn as he approached appellant. It is true that there

is no specific statutory provision requiring a motorist at all times to sound the horn when approaching a pedestrian from the rear. No such warning is required as an express statutory command. But section 5034.41, Code of 1939, requires every motor vehicle to be equipped with a horn capable of emitting a sound audible under normal conditions from a distance of not less than 200 feet. The section further states:

"The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway."

What does the phrase "to insure safe operation" mean? It must mean operation of a motor vehicle in such manner as, in all reasonable probability, it will not injure the motorist and those riding with him, or any other persons or property rightfully on and using the highway. What do the words "reasonably necessary," as used in the section, mean? Do they not mean and call for the same conduct as the standard, reasonably prudent person would use under the same circumstances? If such a person would sound a horn, to not do so would ordinarily be negligence.

The appellant and the appellee had equal rights upon the highway. The rights and duties of appellant leading his cow and of the appellee driving his automobile were reciprocal. Each was required to exercise such ordinary, reasonable care as not to injure the other or his property. Wine v. Jones, 183 Iowa 1166, 1170, 162 N. W. 196; Vass v. Martin, 209 Iowa 870, 874, 226 N. W. 920; Whitman v. Pilmer, 214 Iowa 461, 467, 239 N. W. 686; Rolfs v. Mullins, 179 Iowa 1223, 1228, 162 N. W. 783; McMurry v. Guth, 229 Iowa 776, 779, 295 N. W. 133; Orth v. Gregg, 217 Iowa 516, 520, 250 N. W. 113; Roberts v. Hennessey, supra, 191 Iowa 86, 95, 96, 181 N. W. 798; Handlon v. Henshaw, 206 Iowa 771, 773, 221 N. W. 489; Huffman v. King, supra, 222 Iowa 150, 155, 156, 268 N. W. 144. We said in Ege v. Born, 212 Iowa 1138, 1147, 236 N. W. 75, 80:

"It is a well recognized rule that the rights of all persons lawfully using a street or highway for travel are mutual and co-ordinate. and the operator of an automobile has no rights on

the highway superior to those of others who are engaged in the lawful use of the same.''

The appellee had the appellant and the cow under observation while the first was traveling 2,400 feet and the last-mentioned was walking 400 feet. Both distances are approximately correct. Neither the appellee nor his wife, during this distance, saw anything in the conduct of the appellant or the cow indicating that either was conscious of the approach of the automobile, except, as they state, the act of the appellant in moving a little closer to the south edge of the road. In passing upon the motion to direct we must accept as true the appellant's testimony that he had no knowledge of the approaching car until he was knocked down. It was for the jury to pass upon all the facts respecting whether the appellant or the cow was oblivious of the approach of the car, and whether the appellee should have sounded the horn at some point in the intervening distance in such manner as to have warned the appellant, and not have attempted to approach quietly and pass by the cow in the manner in which he did. It was for the jury to say whether a cow, though gentle and well-behaved, and going along quietly, might probably be frightened by an automobile approaching her closely from the rear in such manner as to suddenly apprise her of its presence. A jury might find that a motorist could not be reasonably sure of what the cow might do under the circumstances. Its actions may be quite as unpredictable as what a child might do in a similar situation. We have spoken of the care required of a motorist in such case. Webster v. Luckow, 219 Iowa 1048, 258 N. W. 685; Darr v. Porte, 220 Iowa 751, 263 N. W. 240. In the case before us the situation was one where, under section 5034.41, a jury might say it was ''reasonably necessary to insure safe operation'' to have given an audible signal. A jury might reasonably say that is what the ordinarily prudent driver would have done, and that it was the easy and right thing to do.

In Orth v. Gregg, supra, 217 Iowa 516, 520, 250 N. W. 113, 115, we said:

''A timely warning to plaintiff would not have been a vain thing. It would have given notice of a close approach of danger,

which, under the circumstances in this case, plaintiff had no special reason to apprehend.''

A warning horn, sounded back where a prudent person would have sounded it, would have put the appellant on guard where he might have prevented the cow from being scared or have protected himself. Appellee knew that he would have to pass within 10 or 12 feet of the cow. He knew, or the jury might have found, that the automobile, which he said was in good mechanical condition and ran quietly, might probably startle the cow and surprise the appellant. In Delfs v. Dunshee, 143 Iowa 381, 385, 386, 122 N. W. 236, 239, it was a horse hitched to a buggy which was frightened by the defendant's automobile. In sustaining a judgment for plaintiff, this court said:

''The evidence tended to show that a horse though well broken is likely to become frightened by an automobile or other vehicle coming from the rear in close proximity to it in passing, unless some warning is given. For this reason, these machines are supplied with a signal horn with which to sound a warning of their approach. *Whether such signal is essential in the exercise of ordinary care must be determined from the circumstances of each case.* \* \* \* *No argument is required to demonstrate that an automobile, making little noise in moving as in this instance, and passing as the evidence tended to show this did, would be likely to frighten an ordinarily well-broken horse; and whether the defendant, in operating it as he did in passing, exercised the caution an ordinarily prudent man would in like circumstances, was for the jury to determine.''* (Italics ours.)

It is the particular province of the jury to determine matters of fact in the trial of a cause. The jurors are especially fitted for that duty. The composite judgment of twelve citizens of the county, with their wide and diverse experiences and their varied knowledge, is a most efficient instrumentality in passing upon what is or is not negligence, or what the ordinarily reasonably prudent and careful person would have done under the circumstances. It is our conclusion that the court encroached upon the province of the jury in holding as a matter of law that the

640

appellee was not negligent in not sounding a warning horn at the proper time.

Appellee has cited cases of the type of Bishard v. Englebeck, 180 Iowa 1132, 164 N. W. 203; Howk v. Anderson, 218 Iowa 358, 367, 253 N. W. 32; Crutchley v. Bruce, 214 Iowa 731, 735, 240 N. W. 238; and Pettijohn v. Weede, 209 Iowa 902, 227 N. W. 824, in which a child jumped from a place of safety or hiding, when his presence was unknown and not reasonably to be expected. Such cases have little application. The case closest in point which the appellee cites is Simmons v. Lewis, 146 Iowa 316, 125 N. W. 194, but the facts distinguish it. In that case the driver of the team knew of the approach of the automobile and had a firm hold upon the reins. There was nothing that the motorist failed to do. Precedents, because of their difference in facts in cases of this kind, are not of great value. In addition to those cited in support of our holding are, Handlon v. Henshaw, supra, 206 Iowa 771, 773, 221 N. W. 489, 490; Quick v. Paulson, 228 Iowa 665, 667, 292 N. W. 853; Hollins v. Crawford, La. App., 11 So. 2d 641. In the latter case, under circumstances similar to those in this case, the defendant approached a subnormal negro walking on a country highway, without sounding the automobile horn. In his fright the negro ran into the automobile. A judgment against the defendant was upheld. In Handlon v. Henshaw, supra, we said:

"It cannot be held, as a matter of law in every case, that an auto driver is absolved from giving a signal on approaching a pedestrian on a highway on the theory that the pedestrian saw the vehicle immediately prior to the collision."

In Short v. Powell, supra, 228 Iowa 333, 337, 291 N. W. 406, 408, the court, after quoting what is now part of section 5034.41 of the 1939 Code, said:

"As to when the horn must be used being thus left to the reasonable discretion of the driver, it would seem to require no argument or citation to show that whether plaintiff would have sounded his horn was a fact question rather than one of law."

It appears to the court that under the record reasonable and fair-minded men might with good reason have different conclu-

sions as to whether the failure of the appellee to sound the horn, as alleged, was negligence, and whether it was the proximate cause of appellant's injury. Both of these questions should have been submitted to the jury.

II. Was the appellant contributorily negligent as a matter of law? We think not. This court has held, times too numerous to name, that the issue of contributory negligence is ordinarily for the jury to determine. It has said that:

"It is the well settled rule of law in this state that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, that question is one for the jury." Huffman v. King, supra, 222 Iowa 150, 154, 268 N. W. 144, 147, citing many decisions of this court.

See, also, Montanick v. McMillin, 225 Iowa 442, 448, 280 N. W. 608; Lathrop v. Knight, supra, 230 Iowa 272, 277, 297 N. W. 291; Pierce v. Dencker, 229 Iowa 479, 484, 294 N. W. 781. We have said that where reasonable minds may reasonably differ on the issue of contributory negligence it is for the jury. We have repeatedly held that:

"Proximate cause and contributory negligence are questions for the jury, save in very exceptional cases where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom." Fitter v. Iowa Telephone Co., 143 Iowa 689, 693, 121 N. W. 48, 50.

See, also, McSpadden v. Axmear, 191 Iowa 547, 551, 181 N. W. 4; Roberts v. Hennessey, supra, 191 Iowa 86, 95, 181 N. W. 798; Huffman v. King, supra, 222 Iowa 150, 155, 268 N. W. 144; Carlson v. Meusberger, 200 Iowa 65, 72, 204 N. W. 432; Youngman v. Sloan, 225 Iowa 558, 560, 281 N. W. 130; In re Estate of Green, 224 Iowa 1268, 1274, 278 N. W. 285; Heacock v. Baule, 216 Iowa 311, 313, 249 N. W. 437, 93 A. L. R. 151; Vass v. Martin, supra, 209 Iowa 870, 874, 226 N. W. 920; Sexauer v. Dunlap, 207 Iowa 1018, 1021, 222 N. W. 420; Enfield v. Butler, 221 Iowa 615, 624, 264 N. W. 546; Gilbert v. Vanderwaal, 181 Iowa 685, 697, 165 N. W. 165.

Appellee asserts that appellant was negligent in not discovering his automobile as it approached. The cow was a fast

walker and rather led the appellant at first. Appellant said his rate of speed was about three or three and a half miles an hour. The appellee went 2,400 feet while the appellant went 400 feet. Appellee traveled six times as fast as the appellant, or about twenty miles an hour, or approximately 30 feet a second. He covered the distance between them in eighty seconds. Any observations made by appellant had to be made in that period of time. He looked back over his shoulder perhaps two or three times but did not see the automobile, although appellee and wife said that it was in sight of appellant during all of this time. It was not at all times on the same side of the road. It gradually angled from the south to the north side. It was a quiet winter morning; the appellant had good hearing, but he did not hear the car. Apparently the cow did not. He had a right to assume that appellee would not run up on him suddenly and unannounced. He had a right to assume that appellee would obey the laws of common caution and prudence, and the statutes of the state. Fair-minded men might say that he had a right to expect that the automobile horn would be sounded. He was not required, as a reasonably prudent man, under the circumstances, to keep a constant observation behind him or to look at any particular times. We have so held many times in cases involving persons walking along or crossing highways, particularly in daylight. See Delfs v. Dunshee, supra, 143 Iowa 381, 389, 122 N. W. 236, 240, where we said:

"Nor was he bound to keep a lookout backwards. He had a right to rely upon those approaching from the rear to do so in the exercise of ordinary care."

See, also, Strever v. Woodard, 160 Iowa 332, 337, 141 N. W. 931, 933, 46 L. R. A., N. S., 644, where the court said:

"Nor are we content with the suggestion of an obligation on the part of a traveler [in a one-horse buggy] that he must, Janus-like, keep an outlook in the rear or have driven from the portion of the highway along which his vehicle was moving."

See Clay v. Iowa Telephone Co., 178 Iowa 67, 68, 69, 159 N. W. 570. In that case a team and wagon were driven upon a man walking on a village street at night. We said:

"The contention for the appellant [defendant] is that plaintiff could have discovered the team with practically the same ease with which the driver could have discovered him. * * * We think neither contention can be sustained. The plaintiff was not guilty of contributory negligence as a matter of law by failing to keep a lookout backward. * * * Reasonable care on the part of those approaching from behind him would render him safe in any part of the highway; whereas carelessness would subject him to danger in any part of it."

Wine v. Jones, supra, 183 Iowa 1166, 1170, 162 N. W. 196; Roberts v. Hennessey, supra, 191 Iowa 86, 102, 181 N. W. 798; See Read v. Reppert, 194 Iowa 620, 627, 190 N. W. 32, 36, where this court said:

"The rule of ordinary care did not impose upon plaintiff the burden of being constantly on the lookout, to see if her path was free from danger."

In Wine v. Jones, supra, 183 Iowa 1166, 1170, 162 N. W. 196, 198, we said:

"A pedestrian is not bound to constantly keep a lookout for approaching vehicles."

See, also, Hanson v. Manning, supra, 213 Iowa 625, 632, 239 N. W. 793; Huffman v. King, supra, 222 Iowa 150, 155, 268 N. W. 144; Swan v. Dailey-Luce Auto Co., supra, 225 Iowa 89, 95, 277 N. W. 580, 281 N. W. 504; Youngman v. Sloan, supra, 225 Iowa 558, 563, 281 N. W. 130; Rhinehart v. Shambaugh, supra, 230 Iowa 788, 791, 298 N. W. 876.

Appellee also urges that appellant was guilty of contributory negligence as a matter of law, because he was a pedestrian and was not walking on the left side of the highway. Section 5027.02, Code of 1939. " 'Pedestrian' means any person afoot." Section 5000.01 (44), Code of 1939. He cites Benson v. Anderson, 129 Wash. 19, 223 P. 1063, 1064, that one pushing a bicycle is a pedestrian, and Eichinger v. Krouse, 105 N. J. Law 402, 144 A. 638, 639, that one on roller skates, ice skates, or stilts is a pedestrian. Zumwalt v. Tryon, 126 Cal. App. 583, 14 P. 2d 912, 914, holds that a sheepherder endeavoring to chase a lamb off

the highway into a field is not a pedestrian within such a statute as ours. One pushing an unlighted automobile along a street at night was held not to be a pedestrian within such a statute. Stout v. Skinner, 283 Ill. App. 330.

We do not consider it necessary to decide whether the appellant leading a cow was a pedestrian under said section 5027.02. Because if he was, and was thereby negligent per se, it was still a question for the jury whether such negligence contributed in any way or degree to his injury. Negligence to be contributory must have a proximate causal relation to the injury. Whether it has or has not is ordinarily a question for the jury. Carlson v. Meusberger, supra, 200 Iowa 65, 71, 73, 204 N. W. 432; Lane v. Varlamos, 213 Iowa 795, 799, 239 N. W. 689; McNeely v. Conlon, 216 Iowa 796, 248 N. W. 17; McIntyre v. West, 225 Iowa 739, 743–745, 281 N. W. 353; Sexauer v. Dunlap, supra, 207 Iowa 1018, 1024, 222 N. W. 420; Hogan v. Nesbit, 216 Iowa 75, 80, 246 N. W. 270.

It was assuredly a question for the jury in this case. The cow was scared when approached on its left side. Would all reasonable minds agree that if it had been on the left side of the highway facing east and the automobile had approached, as it did, on the right side of the cow, she would not have been scared and jumped into the appellant? Would the appellant and the cow have been any more likely to discover the automobile in the latter situation? Both questions, in reason, might well be answered in the negative by a jury.

In Hollins v. Crawford, supra, La. App., 11 So. 2d 641, 644, it appears that the state of Louisiana has a statute requiring pedestrians to face the traffic. The interdicted negro, who was injured, was walking with the traffic. The court said:

"If the interdict had been walking on the left side of the road and had been startled by this car of defendant as he was, he might have, and it is very probable he would have, run to the other side and the accident would have occurred anyway. There is no way to account for what anyone will do under such circumstances and while suddenly frightened. On the other hand, if Crawford had sounded his horn when a reasonable distance from the interdict, he not only would not have been

startled but if he had there would have been sufficient time for either or both to avoid the accident.

"The plea of contributory negligence is without merit. As above stated, the interdict did nothing more than any normal person would have done under the circumstances. While there might not have been any direct emergency and the interdict not hurt if he had remained where he was, the action of Crawford in failing to give any warning of his approach created an emergency in the mind of the interdict as would likely have been done in the mind of any normal person.

"It clearly was not the fact that the interdict was on the wrong side of the highway in violation of the law that caused the accident for if he had stood there no accident would have occurred. It was the negligence of Crawford in not sounding a warning of his approach that caused the interdict to suddenly run into the car through fright."

The judgment is reversed.—Reversed.

MULRONEY, C. J., and OLIVER, GARFIELD, WENNERSTRUM, MANTZ, and SMITH, JJ., concur.

MILLER, J., dissents.

MILLER, J. (dissenting)—I am unable to agree with the holding of the majority herein and respectfully dissent.

The result of the decision herein is that a motorist, who finds in front of him a farmer leading an animal along the highway, can proceed only at his peril. We have repeatedly held that, if a motorist makes unnecessary noises and frightens the animal, he is liable in damages for such wrongful conduct. If the defendant in this case had sounded his horn to warn the farmer of his approach and the horn had frightened the cow, then the defendant would have been liable for sounding his horn. This opinion now holds that he is also liable for not sounding his horn, even though in all other particulars he proceeded with exceedingly conscientious care to avoid injury to the farmer or the cow. Such a result seems to me contrary to our former pronouncements.

The majority opinion relies upon the case of Delfs v. Dunshee, 143 Iowa 381, 122 N. W. 236. However, examination of

that decision reveals that, in that case, the motorist passed in very close proximity with a horse-drawn vehicle and then stopped in front of the horse. The opinion clearly suggests that had the motor vehicle passed on the other side of the street there would have been no occasion for giving warning of its approach. Here the defendant pulled well over onto the north side of the road, gave ample clearance, slowed down to five miles an hour, after the plaintiff had looked to his rear and had pulled over well onto the south side of the road. Under these circumstances, sounding of the horn might well have been made the basis for a claim of negligence had the cow become frightened. To now say that failure to sound the horn also imposed liability on the defendant places a motorist in a perilous position which the law should not inflict upon him.

This is not a case of a collision between the vehicle and someone on the highway, as in the Louisiana case, upon which the majority place great reliance. Here there was no contact between the automobile and the plaintiff or his cow. Defendant carefully avoided any collision. The only basis for liability is that, while passing the cow in a very careful manner at five miles an hour, the cow became frightened because the defendant had not sounded his horn. I cannot subscribe to the imposition of liability on any such basis.

In the case of House v. Cramer, 134 Iowa 374, 376, 377, 112 N. W. 3, 10 L. R. A., N. S., 655, 13 Ann. Cas. 461, this court states:

"The right to make use of an automobile as a vehicle of travel along the highways of the State, is no longer an open question. Chapter 53, Acts 30th General Assembly (Laws 1904). The owners thereof have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling by some other vehicle. * * * Of course, noises incident to the operation of the machine are not, of themselves, negligent."

Again, in the case of Buchanan v. Hurd Creamery Co., 215 Iowa 415, 420, 421, 246 N. W. 41, 44, this court states:

"It is also true that the rights of a driver of a horse or team attached to a buggy or carriage are not superior to the rights of the driver of an automobile or truck. * * * It must be conceded

that the mere operation of an automobile upon the highway in the usual, ordinary and customary way is not negligence. * * * the making or permitting of unusual or unnecessary noises while the motor vehicle is being operated in the vicinity of horses, which might reasonably be expected to frighten an ordinary horse, is sufficient to justify a finding by the jury that the operator of the motor vehicle was negligent and to impose liability for resultant injury.''

The foregoing decisions recognize that a motorist has the same right on the highway as a domestic animal, and, if the animal becomes frightened from the usual operation of the vehicle, the motorist is not liable on account thereof but may be liable if unusual or unnecessary noises frighten an animal on the highway. Such being the law, how can we say that defendant was under obligation to sound his horn when the very sounding of it might have frightened the cow?

In the case of Cresswell v. Wainwright, 154 Iowa 167, 184, 134 N. W. 594, 600, this court states:

''Under the circumstances, indicating that, if the team was frightened at all by the approach of the automobile, it was frightened in a way not to have been reasonably anticipated, either by plaintiff or by defendant, the sounding of the horn might in itself have constituted negligence; but, in any event, a failure to sound the horn could not have been the occasion of the fright of the team.''

It seems to me that the facts in this case would warrant the same pronouncement which was made in the case of Simmons v. Lewis, 146 Iowa 316, 319, 125 N. W. 194, 195, 196, as follows:

''Assuming the law to be well settled by our decisions that one operating an automobile has the same right in the street as the driver of horses and is liable for a resulting accident only where he fails to use the degree of care as to the speed and management of his machine which the circumstances reasonably require (House v. Cramer, 134 Iowa, 374; Delfs v. Dunshee, 143 Iowa, 381) we are unable to see anything in this record which would justify a finding of negligence. The automobile was being operated at a low rate of speed, little if any greater at the time of

the accident than that of the teams moving in front of it. The noise produced was greater than that of an automobile running on high gear, but not greater than that usually produced by a one-cylinder car running at low gear. There was nothing in the appearance of the automobile specially calculated to frighten horses. It was like ordinary automobiles in its appearance. No warning had been given that the Krause team was frightened or likely to be frightened by the approach of the machine. There is no evidence that the operator of the machine had any reason to suppose from the appearance of the Krause team that it was likely to become frightened and uncontrollable on the near approach of the machine. After the horses manifested fright, nothing could have been done by the operator of the machine, to avoid the accident, for it happened instantly, and the horses were in a few seconds free from the vehicle and dashing along the street. It will not do to say that the machine ought not to have been run on the street at all at the time, for there was no such congestion as to render it negligent on the part of the operator to proceed with due care toward the Fair Grounds. The operator did not run into a crowd, nor, so far as it appears, manifest any intention of proceeding save in a careful and prudent manner in view of the circumstances surrounding her.''

In the case of Gipe v. Lynch, 155 Iowa 627, 632, 136 N. W. 714, 716, the language would seem to be applicable to the record herein, wherein we state:

''There was no evidence tending to show any other loud and sudden noise than that produced by the engine of defendant's automobile in being allowed to run while the machine was standing still at the side of the road, and the court therefore properly refused to submit to the jury any question in regard to the alleged negligence of the defendant in allowing or causing his automobile to make without warning a loud and sudden noise upon the highway, in the absence of anything in the evidence to indicate that defendant observed or in the exercise of ordinary care ought to have observed that the noise of the engine was frightening the plaintiff's horse and might have stopped the explosions of his engine in time to have avoided the accident which resulted from such fright. There is nothing whatever to

indicate that plaintiff's horse was frightened until he was beside the automobile and in the act of passing it, and defendant could not therefore have observed any danger, that the horse would be frightened by allowing his engine to run, in time to have avoided such danger. It was not in itself negligence on the part of defendant to allow his engine to run while his machine was standing still for a temporary purpose by the highway. House v. Cramer, 134 Iowa, 374.''

In Gearhart v. Stouder, 161 Iowa 644, 646, 143 N. W. 499, we held that we were unable to find in the record a scintilla of evidence of negligence of the defendants. I would make the same pronouncement under this record.

In the case of Stewart v. Wild, 196 Iowa 678, 684, 195 N. W. 266, Judge Evans points out very forcefully how unpredictable is the conduct of an animal on the highway. Such habits are recognized there by judicial notice. The same is true here. The defendant certainly should not be required, as a condition precedent to his right to travel on the highway in an automobile, to forecast and predict at his peril the habits of a cow proceeding on the highway before him. As defendant approached this cow he was driving about twenty miles an hour. He slowed down to five miles an hour and pulled well over onto the opposite side of the road to avoid any possibility of colliding with the cow, whatever its unpredictable conduct might be. Had he sounded his horn and frightened the cow, under the pronouncements above quoted, liability would have fastened upon him. To now say that if he fails to sound his horn, and the cow, doing that which no one can predict, becomes frightened, merely by reason of the fact that the automobile undertakes to pass slowly by on the other side of the road, giving all the leeway it can, the defendant must still have a substantial liability imposed upon him for so operating his automobile, deprives the defendant of his equal right to use the highway and makes the right of the owner of the cow so superior to that of the motorist that about the only safe way to proceed is by a detour off the highway. I would affirm.